## Pitcairn, Appellant, *v.* Scully.

*Practice, Supreme Court—Appeals—Questions considered on appeal—Defenses—Discharge in bankruptcy.*

1. Where in an action to recover damages for a conversion of certain bonds and stock, evidence of defendants' discharge in bankruptcy is excluded at plaintiff's instance and on the argument of defendants' motion for judgment n. o. v. the sole question raised and discussed was whether the defendants were released by such discharge, plaintiff cannot on appeal complain that the court below treated the discharge as being in evidence and considered it in disposing of the motion for judgment.

*Conversion—Stocks and bonds—Broker—Defenses—Discharge in bankruptcy—Bankruptcy Act of July 1, 1898, Section 17—General issue—Evidence—Practice, C. P.*

2. A claim against a broker for the conversion of certain stock and bonds is provable in bankruptcy and a discharge is a release of the claim. The provable debts that are excepted from the benefit of a discharge under the Bankruptcy Act of July 1, 1898, c. 541, 30 U. S. Stat. 544, Section 17, sub-divisions 2 and 4, are

those which are fraudulent, etc., and have been reduced to judgment at the time of the discharge.

3. A discharge in bankruptcy in such case is provable under the plea of not guilty.

Argued Oct. 20, 1915. Appeal, No. 76, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 2800, for defendant entered non obstante veredicto in case of Thomas C. Pitcairn v. James W. Scully, Charles A. Painter, Daniel Beech and Edwin S. Fairley, late copartners doing business as Scully, Painter and Beech. Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for conversion of certain bonds and stock.

The facts appear from the following opinion by HAYMAKER, J.:

This is an action in trespass to recover damages for the conversion of certain bonds and stocks owned by the plaintiff. Plaintiff took nonsuit as to Fairley. At the conclusion of the trial the defendants asked us to direct a verdict in their favor, which was refused. The evidence of the plaintiff was not disputed, and we directed a verdict in his favor. The defendants raised no question as to the amount of the verdict, but they set up their discharge in bankruptcy as a bar to plaintiff's right of recovery. On the argument of the motion of defendants for judgment n. o. v. and in the brief of counsel the sole question raised and discussed was whether the defendants were released by that discharge. The defendants were bankers and stock brokers in this city, and the plaintiff is, and then was, a member of this bar. The plaintiff was a customer of the defendants and did business with them for four or five years. The last business transaction between them was the one out of which this controversy grew, and was this: On January 4, 1909, the plaintiff went to the defendants' place of business and directed them to buy him 200 shares of the capital

stock of the Manufacturers' Light & Heat Company, and
as collateral security gave the defendants two six per
cent. bonds of the same company, each of the face value
of $1,000. On January 6, 1910, defendants purchased
150 shares of the stock of that company, and on the 10th
of the same month 50 shares of the stock of the same
company, both purchases being made for account of the
plaintiff and the money therefor advanced by the de-
fendants. After thus purchasing the stock the trans-
action was carried along on the books of the defendants,
they retaining the stock and sending the plaintiff month-
ly statements in which he was charged interest on the
amount of the stock purchased, and credited with divi-
dends on the stock so purchased, and the semi-annual
payments of interest on the bonds. This was an ordi-
nary marginal transaction in which the plaintiff de-
posited with the defendants as his brokers two bonds,
instead of the cash, as margin or collateral security for
the purchase for him of two hundred shares of stock.
There is some evidence going to show that on the day that
the bonds were deposited the defendants purchased 100
shares of Crucible Steel Company stock for the plaintiff,
and that the bonds were put up as margin on that stock.
Whether that was the case is of no consequence, as the
only account or transaction the plaintiff had with the de-
fendants at the time of their failure, and at the time of
the hypothecation of the stock and bonds, was that relat-
ing to the stock and bonds of the Manufacturers' Light
and Heat Company.

In the latter part of April, 1912, the defendants gave
their note to the First National Bank of Pittsburgh for
$244,600.00, which amount also included certain loans by
other banks to the defendants that were lifted by the
First National Bank of Pittsburgh. To secure this latter
bank on that note the defendants hypothecated, as a part
of the necessary collateral the bonds and stock of the
Manufacturers' Light and Heat Company, then owned
by the plaintiff, and which had been pledged by him to

secure the defendants on their purchase of that stock for his account.  The plaintiff paid the defendants nothing on account of the purchase of that stock.  The purchase price of the stock was $4,450.00 and there was due on that stock, on April 24, 1912, $4,655.66.

On April 23, 1912, the bank called this loan, and the plaintiff's bonds and stock, with other collateral held by it, were sold.  On April 25, 1912, the defendants filed their petition in bankruptcy.  The plaintiff made a demand of the defendants for the return of his securities before suit, but after their hypothecation, and about the time of their sale by the bank, and offered to give them his check for the amount due on the purchase of his stock.  On June 23, 1913, the individual members of the firm, as well as the firm, were discharged.  On the trial the plaintiff admitted that the referee in bankruptcy granted a rule on him to show cause why he should not affirm or decline his right to participate in a fund derived from the sale of certain collateral pledged to the First National Bank of Pittsburgh, as security for the note heretofore mentioned, and to show his right, if any, to participate in the distribution of the balance derived from the sale of that collateral after payment of the note, and that in answer to said rule he presented his petition and set forth his claim; that the referee filed his report allowing the plaintiff to participate in the distribution and awarded him a dividend of 40% on $4,198.78, being the balance found by the referee to be due the plaintiff.  In the brief of counsel for plaintiff he admits that since the trial the plaintiff has received $1,619.63, for which the defendants are entitled to credit.  The schedule of bankruptcy show that the plaintiff was listed as a general creditor.

There are only two questions raised in this case: (1) Was the claim of plaintiff a debt provable in bankruptcy, and if it were does it come within any one of the exceptions of Section 17, of the Bankruptcy Act of July 1, 1898, c. 541, 30 U. S. Stat. 544.

Section 1 of that act, defining the meaning of words and phrases, says:

"Debt shall include any debt, demand or claim provable in bankruptcy," and "Discharge" shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted under this act."

The 63d Section of the act, paragraph a, defines provable debts, and we quote only subdivision 4 thereof as being the only one applicable to the case in hand:

"Debts of the bankrupt may be proved and allowed against his estate which are......founded upon an open account, or upon a contract express or implied ......."

Paragraph b of that latter section provides:

"Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

Section 17 provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied......; (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; (3) have not been duly scheduled......; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

Section 5, of the Act of February 5, 1903, c. 487, 32 U. S. Stat. 797, amends subdivision 2 of Section 17, of the Act of 1898, so as to read, "Liabilities" instead of "judgments" in cases of obtaining property by false pretenses or false representations, for alimony, seduction and criminal conversation, but makes no change in subdivision 4 of the Act of 1898. We do not think this amendment affects the case in hand, which is to be de-

cided under the Act of 1898, and the decisions relating thereto.

The question is: Was the plaintiff's claim a provable debt? If not, or if it were excepted from the operation of the discharge, we should enter judgment against the defendants. We are of opinion that the plaintiff's claim was a provable debt, and was released by the defendants' discharge in bankruptcy. We are forced to this conclusion by recent decisions from which there seems to be no escape, one of which is Crawford v. Burke, 195 U. S. 176. In that case the allegations of fraud and business dishonesty were of a more aggravated character than in the present case. Crawford, et al., were stock brokers that not only sold their customers' stock and converted the proceeds, but after doing so made calls on the customer for more margin in order to save the stock, and thereby secured over ten thousand dollars. In that case the customer sued in trover, and in our case in trespass in the nature of trover. The Supreme Court in Crawford v. Burke, supra, in construing the 17th Section of the Act of 1898, said (p. 186):

"Under this section, whether the discharge of the defendants in bankruptcy shall operate as a discharge of plaintiff's debt, it not having been reduced to judgment, depends upon the fact whether that debt was 'provable' under the Bankruptcy Act, that is, susceptible of being proved; Second, whether it was or was not created by defendant's fraud, embezzlement, misappropriation or defalcation while acting as an officer or in a fiduciary capacity."

That court said, after some comment on the 63d section of the act, defining provable debts (p. 187):

"......We are clear that the debt of the plaintiff was embraced within the provision of paragraph 'a' as one 'founded upon an open account or upon a contract, express. or implied,' and might have been proved under Section 63-a had plaintiff chosen to waive the tort and take his place with the other creditors of the estate. He

did not elect to do this, however, but brought an action of trover, setting up a fraudulent conversion of his property by defendants."

That is precisely what was done in our case, and we are not able to distinguish why the debt in the present case is not as provable as that in Crawford v. Burke, supra. The claim of plaintiff being a provable one, we now come to the next question in the case: (2) Is it excepted under subdivisions 2 and 4 of the 17th Section of the Act of 1898? We find that in the same case it was held that the provable debts that are excepted from the benefit of a discharge are fraudulent, etc., debts that were in judgment at the time of the discharge, and not fraudulent debts generally. It naturally excites some wonder why a fraudulent debt in judgment should not be released by a discharge, while another debt equally, or more, fraudulent should be released for no other reason than that it was not in judgment. An explanation is given in a number of cases to the effect that were it otherwise in the act of Congress there would be a strong temptation to creditors to show fraud on the part of their debtors in ordinary commercial transactions, and thus avoid a release of the debtor by discharge. The claim of the plaintiff being provable, although it does arise out of the fraudulent act of the defendants in converting his bonds and stock to their own use, it is not within the exception of subdivision 2 of Section 17. It is equally clear that the defendants do not come within subdivision 4 of that section, as they were not officers nor did they sustain a fiduciary relation to the plaintiff: Crawford v. Burke, supra; Chapman v. Forsyth, 43 U. S. 202; Brackner v. Milner, 104 Fed. Repr. 522; Hennequin v. Clews, 111 U. S. 676; Goodman v. Herman, 172 Mo. 344; Scott v. Porter, 93 Pa. 38; Morse & Rodgers v. Kaufman, 100 Va. 218; Tindle v. Birkett, 205 U. S. 183; In re Adler, 152 Fed. Repr. 422. In the case of Crosby v. Miller & Vaughn, 25 R. I. 172, the plaintiff had been a customer of the defendants, who as

brokers had bought and sold stocks for her account. The plaintiff deposited stocks and bonds with the defendants to secure them against any loss growing out of dealings for her. The defendants made an assignment while owing her a balance and were legally bound to return to her the securities, which they failed to do. It was held that defendants were not within the exception of Section 17, Clause 4, of the Act of 1898; and it seems to also hold that an action of trover and conversion is not an action for fraud within paragraph 2 of that same section.

The plaintiff calls our attention to the case of Sproul v. Sloan, 241 Pa. 284, to show that the act of the defendants constituted a conversion, which the defendants admit, but proof of a conversion does not necessarily prevent a bankrupt from being released under a discharge in bankruptcy. That case does not involve the bankruptcy acts. Nor are we able to see the application of the case of In re McIntyre & Co., 181 Fed. Repr. 955, cited by plaintiff. The case of Brown & Adams v. United Button Co., 149 Fed. Repr. 48, was for unliquidated damages not growing out of any contractual relation between the parties and is not controlling; and the same might be said of In re New York Tunnel Co., 159 Fed. Repr. 688, an action for damages for negligence causing death. The case of Richardson v. Shaw, 209 U. S. 365, does not involve a question of discharge in bankruptcy, but one of preference, and holds that a broker is a pledgee. Likewise in the case of In re Bolling, 147 Fed. Repr. 786, cited by the plaintiff. We have reached the conclusion, much against our earlier impressions, that the discharge of the defendants was a release of the plaintiff's debt. We are also of opinion that the defendants were not precluded from proving their discharge under their plea of "not guilty." The action was trespass, and our Procedure Act of May 25, 1887, 271, Section 7, says that "the only plea in the action of trespass shall be not guilty," under which the defendant may offer evi-

dence of his title in an action of trespass for damages to real estate: Edwards v. Woodruff, 25 Pa. Superior Ct. 575. He could do so before the Act of 1887: Altemose v. Hufsmith, 45 Pa. 121. Under our Act of 1887 the defendant can prove a release of damages on a plea of "not guilty," in an action of trespass for personal injuries: Johnson v. Philadelphia & Reading R. R. Co., 163 Pa. 127. Our attention has not been called to any case in this State in which an appellate court has held that a defendant may not prove his discharge in bankruptcy under a plea of the general issue. The plaintiff could have ruled the defendants to furnish him with a bill of particulars of their defense under rule 119 of our rules of court.

The defendants' motion for judgment in their favor non obstante veredicto is allowed, and judgment is now entered in their favor.

*Error assigned* was in entering judgment for defendants non obstante veredicto.

*Lowrie C. Barton,* for appellant.

*H. K. Siebeneck,* of *Seymour, Patterson and Siebeneck,* with him *T. A. Miller* and *O. D. Thompson,* for appellee.

Per Curiam, January 3, 1916:

The judgment is affirmed on the opinion of the learned court below entering judgment for the defendants non obstante veredicto. The discharge in bankruptcy was offered in evidence but rejected by the trial court. Conceding that the court should have considered and disposed of the defendants' motion for judgment on the record with this evidence excluded, the plaintiff acquiesced in the court hearing and ruling the motion on the theory that the discharge was in evidence and before the court for consideration. In his opinion, the learned judge says: "On the argument of the motion of defend-

ants for judgment n. o. v. and in the brief of counsel the sole question raised and discussed was whether the defendants were released by that discharge." The case must be disposed of here on the same theory. It is now too late for the appellant to complain that the court below treated the discharge in bankruptcy as being in evidence and considered it in disposing of the motion for judgment: Safe Deposit Bank of Pottsville v. County of Schuylkill, 190 Pa. 188; Lehman v. Lehman, 215 Pa. 344.