MEGAL DEVELOPMENT CORPORATION,
Plaintiff-Respondent,

v.

Craig SHADOF, d/b/a Spectrum Investments, and
Susan Shadof, Defendants-Appellants.

Supreme Court

*No. 2004AP1594–FT. Oral argument September 7, 2005.*
*—Decided November 8, 2005.*

2005 WI 151

(Also reported in 705 N.W.2d 645.)

For the defendants-appellants there were briefs by *Todd C. Esser* and *Todd C. Esser & Associates,* Milwaukee; and *Henry E. Koltz* and *Schmidt, Darling & Erwin,* Milwaukee, and oral argument by *Todd C. Esser.*

For the plaintiff-respondent there was a brief by *O. Thomas Armstrong, Roy L. Prange, Jr., Valerie L.*

*Bailey-Rihn, Patrick J. Schoen* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *Valerie L. Bailey-Rihn.*

An amicus curiae brief was filed by *J. Bushnell Nielsen, Daniel Kelly, Krista J. Ebbens,* and *Reinhart Boerner Van Deuren S.C.,* Waukesha, on behalf of the Wisconsin Land Title Association.

¶ 1. N. PATRICK CROOKS, J. This appeal is before the court on certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (Rule) (2003–04).[1] Defendants Craig and Susan Shadof (Shadofs) appeal an order of the circuit court denying their application for satisfaction of a judgment and a judgment lien under Wis. Stat. § 806.19(4), where the underlying judgment had been discharged in bankruptcy. The Shadofs appealed, and the court of appeals certified the issue of whether § 806.19(4) requires the satisfaction of a judgment debt against a homestead, where the underlying judgment has been discharged in bankruptcy, yet the debtor's homestead equity exceeds the allowable homestead exemption, and where the debtor failed to seek avoidance of the judgment lien in the bankruptcy court. The court of appeals further raised the issue of whether, if § 806.19(4) does require the satisfaction of a judgment debt when the underlying judgment has been discharged in bankruptcy, the statute is in conflict with, and therefore preempted by, federal bankruptcy law.

¶ 2. We conclude that the circuit court erred in refusing to satisfy the judgment debt pursuant to Wis. Stat. § 806.19(4). The plain language of the statute unambiguously provides that when a proper application

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

is received by the clerk and submitted to the judge for signature, the only thing required for satisfaction of a judgment debt and cessation of an associated judgment lien is that the underlying judgment has been discharged in bankruptcy. Further supporting our conclusion is the legislative history of the statute, as well as persuasive precedent discussed herein. We also conclude that § 806.19(4) is not in conflict with, and therefore not preempted by, federal bankruptcy law.

I

¶ 3. The relevant facts are not in dispute. On May 18, 1994, Megal Development Corporation (Megal) obtained a small claims judgment for eviction and money damages against the Shadofs in the amount of $52,713.78. Pursuant to Wis. Stat. §§ 806.10(1), 806.15(1) and 815.20(1), the judgment subsequently became a lien upon the Shadofs' homestead property located in Waukesha County, Wisconsin.

¶ 4. In February 2003 the Shadofs filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Wisconsin. They included the Megal judgment as a dischargeable debt on Schedule D of their bankruptcy forms. On June 12, 2003, at the conclusion of the bankruptcy proceedings, Judge James E. Shapiro granted the Shadofs a Discharge of Debtor, which included a discharge of the debt to Megal. The Trustee in bankruptcy found that after subtracting the first and second mortgages, the homestead exemption, and the judgment lien from the value of the homestead, there was no money left in the estate to pay unsecured creditors. Therefore, the Trustee abandoned the property at which point it reverted to

the Shadofs. Coming out of bankruptcy, the Shadofs' homestead equity exceeded the $40,000 homestead exemption.

¶ 5. During the bankruptcy proceeding, Megal filed an Objection to Debtor's Claim for Exemption on May 22, 2003, arguing that the Shadofs had equity in their homestead in excess of the $40,000 exemption. The bankruptcy court set aside Megal's objection as premature, because the Shadofs had not sought to avoid any portion of Megal's judgment lien. However, the bankruptcy court order specified that Megal retained the right to challenge any subsequent lien avoidance motion brought under 11 U.S.C. § 522(f)(2004).

¶ 6. On June 16, 2003, the Shadofs filed an application with the Waukesha County Circuit Court seeking an order satisfying the Megal judgment and the judgment lien pursuant to Wis. Stat. § 806.19(4). Circuit Court Judge Donald J. Hassin, Jr. signed an order satisfying Megal's judgment and associated judgment lien on June 20, 2003. That same day, Megal filed an objection to the Shadofs' application based upon the position that § 806.19(4) only permits satisfaction of judgments, and judgment liens, which have been discharged in bankruptcy. As a result, the circuit court vacated its previous order and scheduled the matter for further proceedings.

¶ 7. At the hearing on application for satisfaction, Megal argued that under *Dewsnup v. Timm,* 502 U.S. 410, 112 S. Ct. 773 (1992), a Chapter 7 bankruptcy proceeding discharges a person's in personam debt, but not the in rem judgment lien, which survives bankruptcy. Because the judgment lien had not been discharged, Megal maintained it was inappropriate to satisfy the lien under Wis. Stat. § 806.19(4). Megal asserted that the Shadofs could not obtain satisfaction

of a debt under the statute when they possessed equity in their homestead in excess of the statutory exemption. The circuit court, Judge Mark S. Gempeler presiding, agreed with Megal. Judge Gempeler's order did three things. First, it denied satisfaction of the judgment granted to the Shadofs in bankruptcy. Second, it granted Megal's motion to extend indefinitely the judgment lien to permit Megal to execute on its judgment. Finally, it stayed Megal's right to execute the judgment during the pendency of the appeal of its decision, or the expiration of the Shadofs' appeal rights. The Shadofs appealed to the court of appeals, which certified the matter to this court.

## II

¶ 8.    Statutory interpretation is an issue of law which we review de novo. While the review is de novo, this court benefits from the analyses of the circuit court and the court of appeals. *State v. Anderson*, 2005 WI 54, ¶ 23, 280 Wis. 2d 104, 695 N.W.2d 731 (citing *State v. Waushara County Bd. of Adjustment*, 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514).

¶ 9.    We address two issues in this case. First, whether under the circumstances presented, Wis. Stat. § 806.19(4) requires the satisfaction of Megal's judgment debt, including the judgment lien against the Shadofs' homestead. Second, if this court determines that § 806.19(4) does require satisfaction of the judgment debt, is that statute preempted by federal bankruptcy law. We will consider each in turn.

¶ 10.    The first issue before the court is whether Wis. Stat. § 806.19(4) requires satisfaction of a judgment debt, including a judgment lien, when the under-

lying judgment has been discharged in bankruptcy, but the equity in the homestead to which the lien attaches exceeds the homestead exemption.[2]

---

[2] Wisconsin Stat. § 806.19(4) states in relevant part:

(a) Any person who has secured a discharge of a judgment debt in bankruptcy and any person interested in real property to which the judgment attaches may submit an application for an order of satisfaction of the judgment and an attached order of satisfaction to the clerk of the court in which the judgment was entered.

(b) The application and attached order shall be in substantially the following form:

### APPLICATION FOR ORDER OF SATISFACTION OF JUDGMENTS DUE TO DISCHARGE IN BANKRUPTCY

TO: Clerk of Circuit Court . . . . County

1. . . . . (Name of judgment debtor) has received an order of discharge of debts under the bankruptcy laws of the United States, a copy of which is attached, and . . . . (Name of judgment debtor or person interested in real property) applies for satisfaction of the following judgments: . . . . (List of judgments . . . .)

2. a. Copies of the schedules of debts as filed with the bankruptcy court showing each judgment creditor for each of the judgments described above are attached; or

b. Each judgment creditor for each of the judgments described above has been duly notified of the bankruptcy case in the following manner: . . . . (statement of form of notice).

3. The undersigned believes that each judgment listed above has been discharged in bankruptcy, and no inconsistent ruling has been made by, or is being requested by any party from, the bankruptcy court.

Dated this . . . . day of . . . . , . . . . (year)

. . . . (Signature)

Judgment Debtor, Person Interested in Real Property or Attorney for Debtor or Person

¶ 11. Megal argues that the plain language of the statute is unambiguous, and clearly requires that in order for a judgment debt, including a judgment lien, to be satisfied under the statute, the lien itself, not simply the underlying judgment, must have been avoided in bankruptcy. Megal bases this interpretation on the distinction between in personam judgments, and in rem judgment liens (an in rem action based upon in personam liability). Bankruptcy provides a discharge of in personam liability for debts. *See Dewsnup,* 502 U.S. at 418. However, a bankruptcy discharge leaves a lien on real property intact. *Id.* (citing *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S. Ct. 2150 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor

ORDER OF SATISFACTION

The clerk of circuit court is directed to indicate on the judgment and lien docket that each judgment described in the attached application has been satisfied.

Dated ...

. . . . (Signature)

Circuit Judge

. . . .

(c) Any person submitting an application and attached proposed order shall serve a copy of the completed application and attached proposed order on each judgment creditor for each of the judgments described in the application within 5 business days after the date of submission.

(d) Upon receipt of a completed application, the clerk shall submit the attached proposed order for signature by a judge after which the clerk shall satisfy of record each judgment described in the application. Upon satisfaction, a judgment shall cease to be a lien on any real property that the person discharged in bankruptcy owns or later acquires.

in personam – while leaving intact another – namely, an action against the debtor in rem.")).

¶ 12.  Because an in rem judgment lien survives bankruptcy, Megal urges, a debtor must pursue an 11 U.S.C. § 522(f)(2004) motion in federal court to avoid the lien. Therefore, to make Megal's in personam judgment debt and in rem judgment lien eligible for satisfaction under Wis. Stat. § 806.19(4), the Shadofs must have successfully avoided the lien under § 522(f). Having failed to avoid the lien, Megal reasons, its judgment lien was not "discharged" in bankruptcy, and is therefore ineligible for satisfaction under § 806.19(4).

¶ 13.  The Shadofs also believe the statute to be unambiguous, yet in support of the opposite result. The Shadofs maintain that the plain language of Wis. Stat. § 806.19(4) clearly states that if a judgment debt is discharged in bankruptcy, the judgment shall be satisfied if a proper application is made to the court. The court of appeals seems to agree, stating in its certification "On the surface, Wis. Stat. § 806.19(4) appears to clearly and unambiguously entitle a judgment debtor to a satisfaction of a judgment debt that has been discharged in bankruptcy."

¶ 14.  The Shadofs contend that the statute provides a checklist of conditions which, if met, shall lead to the satisfaction of a creditor's judgment and associated judgment lien. Wisconsin Stat. § 806.19(4) requires judgment debtors to (1) "secure[] a discharge of a judgment debt in bankruptcy"; (2) give notice to judgment creditors; and (3) make a proper application for an order of satisfaction, certifying that the judgment has been discharged in bankruptcy. The Shadofs do not dispute Megal's position that ordinarily liens survive bankruptcy. *See Johnson,* 501 U.S. at 84. Nor do they

question the contention that 11 U.S.C. § 522(f) (2004) provides a means in the federal bankruptcy code for a debtor to avoid such liens.

¶ 15. The Shadofs' position is that Wis. Stat. § 806.19(4) provides a mechanism through operation of state law for a debtor to obtain satisfaction of a judgment and a judgment lien when the underlying judgment has been discharged in bankruptcy, whether or not the debtor has first obtained a lien avoidance. Having satisfied what they interpret to be the exclusive requirements of § 806.19(4), the Shadofs believe the circuit court should have satisfied the judgment and judgment lien.

### III

¶ 16. [W]e have repeatedly held that statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.

*State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

¶ 17. In this case, both parties urge the court to conclude that the statute is unambiguous, yet they disagree as to its meaning. We find the language of the statute clearly and unambiguously supports the Shadofs' position. Wisconsin Stat. § 806.19(4)(a) provides in relevant part that "[a]ny person who has secured a discharge of a judgment debt in bankruptcy . . . may submit an application for an order of satisfaction of the judgment. . . ." Subsection (4)(d) then states in relevant part that "[u]pon receipt of a completed application . . .

115

the clerk shall satisfy of record each judgment described in the application. Upon satisfaction, a judgment shall cease to be a lien on any real property that the person discharged in bankruptcy owns or later acquires."

¶ 18. Megal urges the court to adopt an alternate understanding of the statute. Megal would have us read the statutory phrase "judgment" as encompassing two elements—the in personam judgment debt, and the associated judgment lien. After discussing the discharge of a "judgment debt," Wis. Stat. § 806.19(4) refers exclusively to the satisfaction of a "judgment." Megal argues that since the rights of secured creditors to proceed against property in rem survive Chapter 7 proceedings, only the in personam judgment debt, not the entire judgment, has been "discharged."[3] Because the Shadofs failed to seek an order under 11 U.S.C. § 522(f)(2004) to avoid the in rem judgment lien, the lien was not "discharged in bankruptcy." Therefore, neither the judgment nor the judgment lien is eligible to be satisfied under § 806.19(4).

¶ 19. The weakness in Megal's position is evident when the statute is reviewed in light of terms used in bankruptcy. First, applying the technical meaning particular to bankruptcy, a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(1) (2004).[4] Black's Law Dictionary defines "discharge" as "[t]he release of a

[3] A contrary position was expressed in *In re Spore:* "A discharge does not fail to void any aspect of a judgment; a discharge in bankruptcy voids all aspects of all judgments to the extent of the debtor's personal liability." *In re Spore,* 105 B.R. 476, 478 (Bankr. W.D. Wis., 1989) (citation omitted).

[4] Section 1 of the Bankruptcy Act of 1898 defines "discharge" as "the release of a bankrupt from all of his debts which

debtor from monetary obligations upon adjudication in bankruptcy." *Black's Law Dictionary* 475 (7th ed. 1999). In other words, in personam liability is "discharged" in bankruptcy. However, liens, including judicial liens, are "avoided" in bankruptcy. *Black's Law Dictionary* 936 (7th ed. 1999).[5] Wisconsin Stat. § 806.19(4) clearly provides that a person who has "secured a *discharge* of a judgment debt" may apply for "an order of satisfaction of the judgment." Wis. Stat. § 806.19(4)(a) (emphasis added). Therefore, even if we accept Megal's parsing of the statute, satisfaction of the in personam money judgment would lead to a satisfaction of the entire judgment. Once the judgment is satisfied, the judgment lien would be satisfied in accord with § 806.19(4)(d). There is no statutory language requiring that an associated judgment lien first be avoided before it can be satisfied.

¶ 20. The final sentence of Wis. Stat. § 806.19(4)(d) states: "Upon satisfaction, a *judgment* shall cease to be a lien on any real property that the person discharged in bankruptcy owns or later acquires." Wis. Stat. § 806.19(4)(d) (emphasis added). Although "judgment debt" could be understood to be comprised of only the in personam judgment, a judgment lien is not a judgment in rem.[6]

---

are provable in bankruptcy, except such as are excepted under this act." *Pitcairn v. Scully,* 97 A. 120, 121 (Pa. 1916).

[5] Black's Law Dictionary defines "lien avoidance" as *"Bankruptcy.* A debtor's depriving a creditor of a security interest in an asset of the bankruptcy estate. 11 U.S.C.A. §§ 506(d), 522(f)." *Black's Law Dictionary* 936 (7th ed. 1999).

[6] The creation of a judgment lien against a property does not create a new in rem judgment. Rather, it provides a means of pursuing satisfaction of an in personam judgment by going after the debtor's real property. The court in *Spore* clarified the

117

■

¶ 21. In this case, we find the language clearly provides that a debtor may have a judgment and an associated judgment lien satisfied through operation of state law, when the underlying judgment has been discharged in bankruptcy.[7] Megal urges this court to read into the statute requirements that are simply not there.[8] Had the Wisconsin Legislature intended to require avoidance under 11 U.S.C. § 522(f) (2004) before a judgment and judgment lien could be satisfied through state procedure, it could have done so.[9] It did

distinction. "The terms in rem and in personam describe actions, not aspects. When used to describe a judgment, in rem means a judgment against a thing, a right, or status while in personam means a judgment against a person. The terms in rem and in personam are mutually exclusive when applied to judgments." *Spore,* 105 B.R. at 478 (citation omitted).

[7] We acknowledge that this result may cause holders of judgment liens to act more quickly, in similar situations, to execute on their liens.

[8] In oral argument, Megal concluded that there were two situations under which it would be appropriate for a judgment lien to be satisfied under Wis. Stat. § 806.19(4): when a judgment lien is avoided under 11 U.S.C. § 522(f) (2004) or some other federal bankruptcy motion, and when a judgment lien never properly attached due to insufficient equity in a property. *See Rumage v. Gullberg,* 2000 WI 53, ¶ 28, 235 Wis. 2d 279, 611 N.W.2d 458 (holding a creditor's properly docketed judgment was not a valid lien against fully exempt homestead property at the time the debtor sold the property).

[9] Other state legislatures have chosen to do so. For example, the New Jersey statutes, in a section entitled "Cancellations Following Discharges in Bankruptcy," provide the following limitation to discharges after bankruptcy:

Where the judgment was a lien on real property owned by the bankrupt prior to the time he was adjudicated a bankrupt, and not

not. Another interpretation would require us to read additional language into the statute. We decline to do so.

## IV

¶ 22. Further buttressing our plain language reading of Wis. Stat. § 806.19(4) is the legislative history of the statute. While the traditional rule is that " 'resort to legislative history is not appropriate in the absence of a finding of ambiguity' " this court has recognized that "[o]n occasion . . . we consult legislative history to show how that history supports our interpretation of a statute otherwise clear on its face." *Seider v. O'Connell,* 2000 WI 76, ¶¶ 50, 52, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 23. The legislative history of Wis. Stat. § 806.19(4) strongly supports the position that the discharge of an in personam judgment in bankruptcy

subject to be discharged or released under the provisions of the Bankruptcy Act, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by him subsequent to his discharge in bankruptcy.

N.J. Stat. Ann. § 2A:16–49.1 (West 2003).

The Illinois statutes go further and provide for the revival of a judgment.

If a judgment debtor has filed for protection under the United States Bankruptcy Code and failed to successfully adjudicate and remove a lien filed by a judgment creditor, then the judgment may be revived only as to the property to which a lien attached before the filing of the bankruptcy action.

735 Ill. Comp. Stat. 5/2–1602 (West 2003).

119

allows for a satisfaction of both the judgment itself and an associated judgment lien. In the past 20 years, there have been two significant amendments to the statute. Both amendments were in response to a Wisconsin court having narrowly construed the statute against the debtor. 1985 Wis. Act 137, 1995 Wis. Act 393. As we have repeatedly stated, when a statute is repealed and recreated following a judicial interpretation, it is "presumed to be the result of conscious deliberation on the part of the legislature." *Verdoljak v. Mosinee Paper Corp.,* 200 Wis. 2d 624, 633, 547 N.W.2d 602 (1996) (citation omitted).

¶ 24. The first significant amendment of the statute came in 1985, following the court of appeals' decision in *State Central Credit Union v. Bigus,* 101 Wis. 2d 237, 304 N.W.2d 148 (Ct. App. 1981). In *Bigus,* the question before the court was quite similar to the issue in this case: "whether a satisfaction order entered on behalf of a discharged bankrupt relieves the discharged bankrupt of the statutorily created in rem effects of a judgment. . . ." *Id.* at 239–40.

¶ 25. The court of appeals sought to reconcile what it felt to be "apparently conflicting remedial statutes." *Id.* at 241. Wisconsin Stat. § 806.15(1) gave a judgment creditor a lien against real property owned by the judgment debtor. Yet the last sentence of the statute provided "the limitation that, where a satisfaction order has been entered upon a claim discharged in bankruptcy, a judgment based upon that claim cannot 'thereafter become a lien on any real property of the discharged person then owned or thereafter acquired.' " *Bigus,* 101 Wis. 2d at 241. In apparent conflict was Wis. Stat. § 806.19(4) that "provide[d] that a person discharged in bankruptcy can obtain a satisfaction of judgment order from the proper court upon applica-

tion." *Id.* The *Bigus* court read the two statutes together "to mean that a judgment lien can be enforced against the bankrupt's property if the judgment was obtained before a satisfaction order is entered pursuant to sec. 806.19(4)." *Id.* at 243.

¶ 26. The *Bigus* court failed to consider the language immediately preceding the statutory language it relied upon, however. The final sentence of Wis. Stat. § 806.15 actually stated "A judgment based upon a claim discharged in bankruptcy shall upon entry of the order of satisfaction or discharge *cease to be* and shall not thereafter become a lien on any real property of the discharged person then owned or acquired." Wis. Stat. § 806.15(1) (1981–82) (emphasis added). By ignoring the statutory phrase "cease to be" the court was able to reason that the legislature only intended to prevent the attachment of liens on property after the conclusion of the bankruptcy proceeding.

¶ 27. The legislature expressed its displeasure with the *Bigus* decision by amending the statute in 1985. The 1985 Wisconsin Act 137 removed the language from Wis. Stat. § 806.15(1) upon which the court of appeals had based its reasoning and repealed and recreated Wis. Stat. § 806.19(4).

¶ 28. Several years later, in *Overhead Door Co. v. Hazard,* the Dane County Circuit Court interpreted the amended statute.[10] The issue in that case was "whether

[10] The amended language provided that "Any person who has secured a discharge in bankruptcy that renders void one or more judgments . . . may submit an application for an order of satisfaction. . . ." Wis. Stat. § 806.19(4) (1987–88). The proposed form in subsection (4)(b) included a statement that "The undersigned believes that each judgment listed above has been completely voided by the discharge in bankruptcy . . . ." Wis. Stat. § 806.19(4)(b) (1987–88). Subsection (4)(d) stated "Upon

121

a surviving judicial lien against the bankrupt's property precludes a motion for satisfaction of the judgment under sec. 806.19(4) Wis. Stats." In *Overhead Door,* the judgment debtor had obtained a discharge of the underlying judgment, but his motion for an order to avoid the judgment lien under 11 U.S.C. § 522(f)(2004) had been denied. The circuit court denied satisfaction of the lien under the Wisconsin statute, stating that because the lien was not successfully avoided under § 522(f) "the judgment at issue was not 'completely voided by the discharge in bankruptcy' as required by sec. 806.19(4)."

¶ 29. In 1995, the legislature acted again. In a move similar to that ten years earlier, the legislature, in its 1995 amendments, removed the language upon which the *Overhead Door* court had based its reasoning. Rather than requiring the debtor to certify that each judgment had been "completely voided by the discharge," it was now sufficient that the listed judgments be "discharged in bankruptcy." 1995 Wis. Act 393. In addition, the final sentence of the current statute was added to Wis. Stat. § 806.19(4)(d). With both of these amendments, the legislature clearly was attempting to correct an interpretation of the statute that ran counter to its intent.

¶ 30. Further supporting our plain language interpretation of the statute is *In re Spore,* 105 B.R. 476 (Bankr. W.D. Wis. 1989), a 1989 case from the United States Bankruptcy Court for the Western District of Wisconsin which interpreted Wis. Stat. § 806.19(4). Although the facts were different, and the court was examining the 1985 amendment of the statute, the

receipt of a completed application, the clerk shall submit the attached proposed order for signature by a judge after which the clerk shall satisfy of record each judgment described in the application." Wis. Stat. § 806.19(4)(d) (1987–88).

argument employed by the debtors in that case was exactly the same as that put forward by Megal.[11] The court in *Spore* reasoned that prior examinations of § 806.19(4) and its predecessors which had construed debtor's rights narrowly, including *Bigus,* had failed to consider Wis. Stat. § 806.21 and the combined effect of the two statutes. The court, by presenting a summary of cases that have examined § 806.19(4) and its predecessors, started from the position that "Wisconsin has provided debtors discharged in bankruptcy the legal basis and the legal means to avoid liens in state court since 1943." *Spore,* 105 B.R. at 483.

¶ 31.  In analyzing the relationship between federal bankruptcy law and Wis. Stat. §§ 806.21 and 806.19(4), the court emphasized the unitary nature of judgments. *Spore,* 105 B.R. at 480. *Spore* reiterated the fact that a lien survives discharge of the underlying judgment in bankruptcy, and emphasized that "a discharge in bankruptcy voids all aspects of all judgments to the extent of the debtor's personal liability." *Id.* at 478 (citing 11 U.S.C. § 524(a)(2)(1989)).

¶ 32.  At the time of the *Spore* decision, Wis. Stat. § 806.21 provided "If a judgment is satisfied in whole or in part or as to any judgment debtor and such satisfaction docketed, such judgment shall, to the extent of

---

[11] The debtors reason as follows ... the discharge alone voids the judicial lien only as to personal liability. Since the Bankruptcy Code does not by itself render void the in rem aspects of a judgment ... the only reasonable construction of order of satisfaction under Wis. Stat. § 806.19(4) is that such order only voids the in personam aspects of such judgment unless some action has been taken under other sections of the Bankruptcy Code to have the judgment lien voided.

*Spore,* 105 B.R. at 478.

such satisfaction, cease to be a lien. . . ." Wis. Stat. § 806.21 (1987–88). Reading § 806.21 in conjunction with Wis. Stat. § 806.19(4), and in light of Wisconsin's long history of providing a mechanism for extinguishing judgment liens after bankruptcy, the *Spore* court concluded that Wisconsin law "provide[s] the legal basis and the legal means for debtors discharged in bankruptcy to void liens surviving bankruptcy." *Spore,* 105 B.R. at 485. The court explained:

> At the present time, Wis. Stat. § 806.15(1) provides for the creation of a lien upon the docketing of a judgment; Wis. Stat. § 806.19(4) provides for the satisfaction of a judgment by a debtor discharged in bankruptcy; and Wis. Stat. § 806.21 provides for the destruction of a lien upon satisfaction. Clearly, no further ambiguity exists for Wis. Stat. § 806.19(4).

*Id.*

¶ 33.  Megal contends that *Spore* is no longer good law after the United States Supreme Court decisions in *Johnson* and *Dewsnup*. Both *Johnson* and *Dewsnup* stand for the proposition that liens pass through bankruptcy despite the discharge of an underlying judgment. Neither holding altered the law with regard to this concept. Megal misstates the reasoning in *Spore* by arguing that the court held, in error, that a bankruptcy discharge voided both the in personam and in rem aspects of a judgment. Since that is an incorrect reading of the *Spore* decision, we conclude that *Spore* is still good law.

¶ 34.  The Wisconsin Legislature, on multiple occasions, has demonstrated its intent to allow debtors to obtain satisfaction of both a judgment and a judgment lien when the underlying judgment has been discharged in bankruptcy. In this decision, we are recognizing and enforcing policy choices made by the Wisconsin Legis-

lature. If the legislature determines such policies are no longer consistent with the best interests of the citizens of this state, it is its exclusive prerogative to amend the statute.

## V

¶ 35. We next turn to the issue of whether Wis. Stat. § 806.19(4) is preempted by the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. Because we find that § 806.19(4) does not conflict with federal bankruptcy law, the statute is not preempted.

¶ 36. The United States Constitution is "the supreme law of the land." U.S. Const. art VI, cl. 2. As the United States Supreme Court explained in *Gibbons v. Ogden:*

> [I]t has been contended, that if a law passed by a State, in the exercise of its acknowledged sovereignty, comes into conflict with a law passed by Congress in pursuance of the constitution, they affect the subject, and each other, like equal opposing powers. But the framers of our constitution foresaw this state of things, and provided for it, by declaring the supremacy not only of itself, but of the laws made in pursuance of it. The nullity of any act, inconsistent with the constitution, is produced by the declaration, that the constitution is the supreme law.

*Gibbons v. Ogden,* 22 U.S. 1, 210–11 (1824).

¶ 37. "Federal preemption may occur through express preemption or implied preemption. Congress may expressly preempt contradictory – or even coterminous – state laws in the text of the laws it passes." *Olstad v. Microsoft Corp.,* 2005 WI 121, ¶ 38, 284 Wis.2d 224, 700

N.W.2d 139 (citations omitted). "Congress may also impliedly preempt state laws by completely occupying a given regulatory field." *Id.* In addition, "implied conflict preemption will be found 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Miezin v. Midwest Express Airlines, Inc.,* 2005 WI App 120, ¶ 10, 284 Wis.2d 428, 701 N.W.2d 626. However, "if the preemption is only implied, courts typically require clear evidence of legislative intent to preempt." *Olstad,* 284 Wis.2d 224, ¶ 38. Further, the U.S. Supreme Court has articulated a "strong presumption" against preemption.[12] *Id.*

---

[12] Discussing the importance of limiting preemption to only those situations obviously intended by Congress, Justice Frankfurter noted in his concurrence in *Bethlehem Steel Co. v. New York State Labor Relations Board.* "To construe federal legislation so as not needlessly to forbid preexisting State authority is to respect our federal system. Any indulgence in construction should be in favor of the States, because Congress can speak with drastic clarity whenever it chooses to assure full federal authority, completely displacing the States." *Bethlehem Steel Co. v. New York State Labor Relations Bd.,* 330 U.S. 767, 780, 67 S. Ct. 1026 (1947) (Frankfurter, J. concurring). *See also Younger v. Harris,* in which Justice Black emphasized the importance of the nation's federal system:

> [T]he notion of "comity, that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue

¶ 38.   In this case, there is no express preemption.[13] In the absence of explicit language preempting state law, the question of "whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process. . . ." *Perez v. Campbell,* 402 U.S. 637, 644, 91 S. Ct. 1704 (1971). First, the court must construe the state and federal statutes. *Id.* Second, we must ascertain whether they are in conflict. *Id.*

¶ 39.   The Shadofs argue that an interpretation of Wis. Stat. § 806.19(4) that allows a debtor to extinguish a judgment and judgment lien upon the satisfaction of the underlying judgment in bankruptcy does not in any way conflict with federal bankruptcy law. Instead, it

---

in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Younger v. Harris,* 401 U.S. 37, 44–45, 91 S. Ct. 746 (1971).

[13] Even though bankruptcy is one of only two legislative powers in Article I, Section 8 of the Constitution in which the power to make "uniform" laws is made explicit, the presumption against displacing state law by federal bankruptcy law is just as strong in bankruptcy as in other areas of federal legislative power.

*Pacific Gas & Elec. Co. v. California ex rel. California Dept. of Toxic Substances Control,* 350 F.3d 932, 943 (9th Cir. 2003).

reflects policy decisions of the legislature to provide additional protections to Wisconsin residents at the conclusion of a bankruptcy proceeding.

¶ 40. Megal maintains that an interpretation of Wis. Stat. § 806.19(4) that would allow a judgment lien to be satisfied when an underlying in personam judgment was discharged in bankruptcy, even though equity remains after applying the homestead exemption, would impermissibly interfere with the Bankruptcy Code (Code), and therefore be preempted by the Supremacy Clause.[14] Megal's position is that such a reading of the statute would afford substantive rights to the debtor expressly at odds with the Code's provisions concerning the equitable distribution of assets among debtors and creditors. If the judgment lien is extinguished by operation of statute, Megal argues, the Shadofs would end up with a windfall, perhaps as much as $20,000, directly in conflict with the Code's goal of providing debtors with a "fresh start" not a "head start." *Taylor v. AGE Fed. Credit Union*, 3 F.3d 1512, 1516 (11th Cir. 1993).

¶ 41. In support of its preemption argument, Megal cites to a long list of cases that stand for the proposition that state laws that interfere with the Bankruptcy Code, or provide additional regulations, are

---

[14] Article I, Section 8, clause 4 of the United States Constitution gives Congress the power "To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." This provision is not at issue in this case. The "Uniformity Clause is not a restriction upon the states. It . . . operates as a limitation on the type of bankruptcy laws Congress may enact. It is difficult, if not impossible, to see how a state law can violate a restriction on the powers of the national legislature." *In re Cross*, 255 B.R. 25, 31 (Bankr. N.D. Ind. 2000) (citations omitted).

preempted. Megal further argues that exemptions that operate only in the context of bankruptcy override Congress's determination of how property should be administered, and are therefore preempted.

¶ 42. One of the cases Megal relies on is *Kanter v. Moneymaker*, in which the United States Court of Appeals for the Ninth Circuit struck down a California statute that limited the assignment of an interest in monies recovered from personal injury actions, which were otherwise available to satisfy creditors' claims. *Kanter v. Moneymaker*, 505 F.2d 228 (9th Cir. 1974). The court held that the statute " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' since it would operate to deny to the trustee assets which could ordinarily be reached in satisfying the claims of general creditors." *Id.* at 231 (citations omitted). Megal, therefore, concludes that although California had the right to exempt property from the claims of creditors, it could not create exemptions which either interfered with bankruptcy proceedings, or operated only in the context of a bankruptcy.

¶ 43. Megal further cites *In re Cross,* 255 B.R. 25 (Bankr. N.D. Ind. 2000), to support the proposition that exemptions that operate only in the context of a bankruptcy are preempted by federal law. *Cross* relied on the Supremacy Clause to strike down an Indiana statute that prevented a trustee in bankruptcy from reaching property held by spouses as a tenancy by the entireties, to satisfy the claims of creditors when only one of the two spouses filed bankruptcy. *Id.* at 32. However, "outside of bankruptcy, Indiana law allows entireties property to be used to satisfy the claims of creditors, but only for the joint debts of both spouses. . . ." *Id.* The offending Code section at issue "completely exempt[ed] entireties property from administration by a bank-

129

ruptcy trustee where only one of the two spouses files bankruptcy, without regard to the existence of joint creditors." *Id.* (citation omitted).

¶ 44.　We conclude that both *Kanter* and *Cross* are distinguishable. Both cases involved state exemption statutes that operated to limit the powers of the trustee during the bankruptcy proceeding from reaching assets that could ordinarily be reached by creditors. The court, in each case, found that while the Bankruptcy Act recognizes state exemptions to assist the debtor to make a fresh start, the provisions at issue failed to meet the criteria of a general exemption. While Wis. Stat. § 806.19(4) is particular to the bankruptcy proceeding, in that it requires the discharge of judgments in bankruptcy before it can operate, it does not create an exemption. Nor does it limit the powers of the trustee during bankruptcy or operate to interfere in any way with the bankruptcy proceeding itself—it simply does not operate during bankruptcy. Section 806.19(4) is dormant until the conclusion of the federal bankruptcy proceeding, and, thus, it does not conflict with the Code. Therefore, neither *Kanter* nor *Cross* requires us to conclude that § 806.19(4) is preempted by federal law.

¶ 45.　Further, federal bankruptcy law allows variations among states in judgment clearing statutes. South Dakota, for example, provides that:

> [a]ny person discharged in bankruptcy may file in the office of each clerk of court in which a judgment has been rendered . . . a certified copy of any bankruptcy court order specifying any judgment discharged in bankruptcy. The clerk shall enter the discharge order in the judgment docket and the entry shall discharge the judgment specified from and after that date.

S.D. Codified Laws § 15–16–20 (West 2003). New York requires the debtor wait a minimum of one year from

the time of the discharge in bankruptcy before he may apply for an order "directing that a discharge or qualified discharge of record be marked upon the docket of the judgment." N.Y. Debt. & Cred. Law § 150 (McKinney 2003). New York courts will direct a qualified discharge be placed on the judgment docket only if:

> (a) it does not appear whether the judgment was a lien on real property owned by the bankrupt or debtor prior to the commencement of the bankruptcy proceedings, or (b) if it appears that the judgment was a lien on such real property and it is not established to the satisfaction of the court that the lien was invalidated or surrendered. . . .

*Id.* Wisconsin Stat. § 806.19(4) provides a mechanism to allow a lien which has survived a bankruptcy to be satisfied through a state procedure. For states that do not have a means of satisfying liens, 11 U.S.C. § 522(f)(2004) provides a mechanism to avoid liens through the federal bankruptcy code. However, the Code itself takes no position on the enforcement or lack thereof of liens after there has been a discharge in bankruptcy, unless § 522(f) has been utilized.

¶ 46. Megal additionally argues that an interpretation of Wis. Stat. § 806.19(4) allowing for a judgment and a judgment lien to be satisfied after the underlying judgment is discharged would operate contrary to Wisconsin's homestead exemption, where equity remains after applying the exemption. We disagree. Neither statute relies upon, or makes reference, to the operation of the other. They are not contingent, nor in conflict.

¶ 47. We agree with the Shadofs' position that Wis. Stat. § 806.19(4) does not conflict with, and is therefore not preempted by, federal bankruptcy law. In this case, the Shadofs' property, including their home-

131

stead, was with the Trustee in bankruptcy for purposes of administration. After determining that once secured creditors were accounted for, along with the homestead exemption, there would be no assets left in the estate to pay unsecured creditors, the Trustee abandoned the homestead property which then reverted back to the Shadofs.

¶ 48. Finally, Megal urges that the Shadofs' interpretation of the statute would violate the Due Process Clause of the XIV Amendment to the United States Constitution, by depriving them of a property right without due process of law. The Shadofs maintain, and we agree, that a judgment lien is nothing more than a mechanism for the enforcement of an in personam money judgment. The judgment and the associated judgment lien only exist through the operation of the Wisconsin statutes. Wis. Stat. §§ 806.10, 806.15.

> Such a lien, under a judgment "does not constitute or create an estate, interest, or right of property in the lands which may be bound for its satisfaction; it gives merely a right to levy on such lands to the exclusion of adverse interests subsequent to the judgment." . . . "the lien of a judgment on lands does not constitute, in law, per se, a property or right in the land itself, and a plaintiff who obtains a judgment does not thereby acquire any interest or estate in the property."

*Musa v. Segelke & Kohlhaus Co.*, 224 Wis. 432, 435, 272 N.W. 657 (1937). The issue of due process was first raised at the oral arguments on this case, but was not fully argued or briefed by counsel for the parties, and, therefore, we do not address it further.

## VI

¶ 49. It is for these reasons we conclude that the circuit court erred in refusing to satisfy the judgment

debt pursuant to Wis. Stat. § 806.19(4). The plain language of the statute unambiguously provides that when a proper application is received by the clerk and submitted to the judge for signature, the only thing required for satisfaction of a judgment debt and cessation of an associated judgment lien is that the underlying judgment has been discharged in bankruptcy. The legislative history of the statute, as well as persuasive precedent discussed herein, provide additional support for our conclusion. We also conclude that § 806.19(4) is not in conflict with, and therefore is not preempted by, federal bankruptcy law.

*By the Court.* The decision of the circuit court is reversed, and this matter is remanded for further proceedings consistent with this decision.