SCHOOL DISTRICT OF STOCKBRIDGE,
Petitioner-Appellant,

v.

Anthony S. EVERS, State Superintendent, State of
Wisconsin, Respondent-Respondent,

Joseph VANDAALWYK, Cindy Vandaalwyk,
Brian Fucile, Amy Fucile, Roger Hildreth,
Tracee Hildreth, Joy Jeffers, Lisa Jodar, Aaron
Juhl, Stacy Juhl and Aaron Karls,
Involuntary-Respondents-Respondents.

Court of Appeals

*No. 2010AP829–AC. Submitted on briefs September 1, 2010.
—Decided September 29, 2010.*

2010 WI App 144

(Also reported in 792 N.W.2d 615.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John E. Thiel* of *John E. Thiel Law Office, LLC*, Appleton.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Bruce A. Olsen*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

A nonparty brief was filed by *Thomas N. Shorter, Anthony J. Gaughan*, and *Bryan J. Cahill* of *Godfrey & Kahn, S.C.* of Madison, for School District of Albany.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. NEUBAUER, P.J. WISCONSIN STAT. § 118.51(2) (2007–08)[1] permits a student to attend a public school in a nonresident school district, or "open enroll" in that district, under § 118.51. The narrow issue presented on appeal is whether a resident school district may limit the number of student transfers to nonresident school districts under § 118.51(6) or, in the alternative, limit the number of transfers via an exercise of its general authority under WIS. STAT. § 118.001 based on undue financial hardship on the resident district. We conclude that the clear and unambiguous language of § 118.51(6) authorizes a percentage cap on resident transfers out of a school district between 1998 and 2006, but authorizes no limit after the 2005–06 school year. Thus, here, State Superintendent Tony Evers correctly determined that the School District of Stockbridge's reliance on § 118.51(6) to deny applications for the 2009–10 school year based on an alleged ten percent cap was contrary to law and, therefore, unreasonable. We further conclude that the School District was not otherwise entitled to deny the open enrollment applications at issue on the basis of alleged financial burden under § 118.001. We affirm.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## BACKGROUND

¶ 2.    This appeal stems from the School District's denial of eight open enrollment applications. The applications were filed in spring 2009, requesting open enrollment for the then upcoming 2009–10 school year. At the time the applications were received, the School District already had more than ten percent of its resident pupils attending nonresident school districts. The School District denied the applications, maintaining as a matter of law that there is a statutory cap set by the legislature under WIS. STAT. § 118.51(6) that allows only ten percent of a resident district's student population to enroll in nonresident districts if the resident school board elects to apply the statutory cap. The School District additionally cited undue financial hardship as state aid money would follow students from the resident district to the nonresident district and create a hardship on the Stockbridge School District.[2] The parents of the students whose applications were

---

[2] The parents of those eight applicants have been joined as involuntary-respondents. The administrative record submitted on appeal contains eight applications with identical denials from the School District. A document listing "[r]easons for denial," that accompanied the form Notification of Approval or Denial, explained in part as follows:

> The School District of Stockbridge Board of Education believes approval of this application would be in violation of Board Policy #5110, which allows the Board to limit transfers to non-resident districts as stated in [WIS. STAT. §] 118.51(6), as approval of it would be in excess of that allowed under this statute and subsequent board policy. By the express words of this statutory law, approval of this application is denied.

> In addition, this application is also denied as approval of it would increase an undue financial burden on the residents of Stockbridge School District . . . .

> . . . .

denied subsequently requested administrative review of the School District's decision under § 118.51(9).[3]

¶ 3. The Superintendent overturned the school board's denial of the open enrollment applications on June 10, 2009. In his decision as to each appeal, the Superintendent reasoned as follows: (1) "Under current law, the last year for which the limit on the percentage of a school district's residents transferring to other school districts could be applied was 2005–06," and (2) "The authority for a resident school board to deny a pupil's application due to undue financial burden can only be exercised if the child is a child with a disability for whom an individualized education program has been developed." The Superintendent determined: "The school board denied open enrollment for reasons not permitted in state law. The decision was arbitrary and unreasonable." *See* Wis. Stat. § 118.51(9) ("The department shall affirm the school board's decision unless the department finds that the decision was arbitrary or unreasonable.").

¶ 4. On July 6, 2009, the School District filed a petition for judicial review with the circuit court pursuant to Wis. Stat. § 227.53. The circuit court affirmed the Superintendent's decisions. The School District appeals.

---

Limiting the transfer of resident students to non-resident districts as allowed by statute and administrative code is neither arbitrary nor unreasonable. It is necessary to maintain the level of support required to provide as uniform of an education to the resident students of Stockbridge as possible.

[3] WISCONSIN STAT. § 118.51(9) provides in relevant part:

If the . . . resident school board prohibits a pupil from attending public school in a nonresident school district under sub. (6), (7) or (12)(b)1., the pupil's parent may appeal the decision to the department within 30 days after the decision . . . . The department shall affirm the school board's decision unless the department finds that the decision was arbitrary or unreasonable.

## DISCUSSION

*Standard of Review*

■■

¶ 5. On appeal, we review the Superintendent's decision, not that of the circuit court; however, our review is identical to that of the circuit court. *See Madison Metro. Sch. Dist. v. Burmaster*, 2006 WI App 17, ¶ 11, 288 Wis. 2d 771, 709 N.W.2d 73. The issue presented is one of statutory construction, which is a question of law. *Id.* While we are not bound by an agency's construction of a statute, "we may give varying degrees of deference to the agency's construction in certain situations." *Id.* Here, the parties agree that we should accord no deference to the Superintendent's statutory construction, as the issue presented is one of first impression. Our review is de novo. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 285, 548 N.W.2d 57 (1996) (de novo review is applicable when issue is one of first impression).

■■

¶ 6. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially-defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language "in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely-related statutes," and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text

and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, the meaning of the statute is plain, then we apply that language to the facts at hand. *See id.*, ¶¶ 45–50.

*The Application of Resident Transfer Limits under* WIS. STAT. *§ 118.51(6)*

¶ 7. WISCONSIN STAT. § 118.51 governs "full-time open enrollment." It provides in relevant part at subsec. (2): "A pupil may attend a public school . . . in a nonresident school district under this section." Section 118.51(6) provides:

> RESIDENT SCHOOL DISTRICT TRANSFER LIMITATIONS. A school board may limit the number of its resident pupils attending public school in other school districts under this section in the 1998–99 school year to 3% of its membership. In each of the 7 succeeding school years, a school board may limit the number of its resident pupils attending public school in other school districts to an additional 1% of its membership. If more than the maximum allowable number of resident pupils apply to attend public school in other school districts in any school year under this section, the school board shall determine which pupils will be allowed to attend public school in other school districts on a random basis, except that the school board shall give preference to pupils who are already attending public school in the school district to which they are applying under this section and to siblings of such pupils.

¶ 8. The School District first argues that the Superintendent erred as a matter of law in his interpretation of the "cap" under WIS. STAT. § 118.51(6), which failed to acknowledge a ten percent cap on the number of resident student transfers out of the district.

We agree with the School District that § 118.51(6) permitted districts to impose a cap on resident student transfers. However, we ultimately agree with the Superintendent that the clear and unambiguous language of the statute permits resident student transfers under § 118.51(2) and then authorizes a school district to limit the transfers on a percentage basis under § 118.51(6) which, by its terms, applies to the 1998–99 school year and the "[seven] succeeding school years." Section 118.51(6) provides no authority to limit the resident student transfers, or open enrollment, provided for in § 118.51(2) after the 2005–06 school year.

¶ 9.   The School District contends that because there is no language expressly removing the cap after the 2005–06 school year, this court should interpret Wis. Stat. § 118.51(6) as permitting school districts to continue to impose a ten percent limit. However, the language of the statute clearly and unambiguously lays out the manner in which the limitations are to be applied. It expressly states that school districts may impose a three percent cap for the 1998–99 school year and then, in the seven succeeding years, a school board may limit the number of resident student transfers to an additional one percent of its membership. *Id.* Because there are no express provisions for any school year beyond 2005–06 and no indication that the application of the 2005–06 percentage limits would be ongoing, the application of the percentage limits must end in 2005–06.[4] *Wood v. City of Madison*, 2003 WI 24, ¶ 38,

---

[4] The amicus curiae, School District of Albany, argues that the third sentence of Wis. Stat. § 118.51(6) supports an interpretation that a school district may limit indefinitely the number of outgoing students under open enrollment to ten percent. That sentence in subsec. (6) addresses how the school board is to determine which students may transfer if "more

260 Wis. 2d 71, 659 N.W.2d 31 ("[C]ourts should not rewrite the clear language of [a] statute.").

■

¶ 10. The School District faults the Superintendent for relying on the legislative history of WIS. STAT. § 118.51(6) in support of his interpretation. However, when a statute is clear and unambiguous, legislative history may be consulted to confirm or verify a plain-meaning interpretation. *State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 51; *Megal Dev. Corp. v. Shadof*, 2005 WI 151, ¶ 22, 286 Wis. 2d 105, 705 N.W.2d 645 (courts occasionally consult legislative history if that history supports the court's interpretation of a statute otherwise clear on its face). Here, the legislative history confirms that after the eighth year, specifically the 2005–06 school year, the percentage limits no longer apply. The Joint Legislative Council[5] summary of the November 21,

---

than the maximum allowable number of resident pupils apply to attend public school in other school districts in any school year under this section." Sec. 118.51(6). However, the language clearly addresses the possibility of this occurring "in any school year *under this section*." As we have already discussed, the school years addressed under subsec. (6) are the 1998–99 school year and "the [seven] succeeding school years." *Id.*

[5] In discussing the use of legislative history in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 69, 271 Wis. 2d 633, 681 N.W.2d 110 (Abrahamson, J., concurring), the concurrence provided the following explanation of Joint Legislative Council materials:

> **Joint Legislative Council Materials.** The Joint Legislative Council was created in 1947. It consists of legislators and functions through study committees that include legislators and public members. The study committees investigate various subject areas at the request of the legislature or the Council, and offer their recommendations in bill form to the Council. The Council proposes legislation to the legislature. When proposing legislation, the Joint

1996 meeting of the Special Committee on Public School Open Enrollment provides:

> After further discussion, the Committee agreed that:
>
> . . . .
>
> (6) As is described in item c. on page 6 of Discussion Paper 96–2, the resident school district may limit the number of pupils attending public school in another district to 3% of its membership in the first year of the program. The 3% threshold will be increased by 1% each year for seven years up to a maximum of 10% in the eighth year. Thereafter, no limits will apply.

This legislative history confirms the already clear and unambiguous statutory language of § 118.51(6), which does not provide for a percentage cap on resident transfers after the 2005–06 school year. Therefore, the School District's denial of the resident transfer applications on this ground was contrary to law and thus unreasonable.

### Financial Burden Analysis

¶ 11. Because state aid money follows a student from one district to another, the School District also cited the financial burden of the resident transfers as a

Legislative Council typically includes explanatory notes in the bill. These notes are often available in Wisconsin Statutes. Courts rely upon the Council's explanatory notes when examining history. Materials produced by the Joint Legislative Council and its committees, in addition to the Notes, including minutes of the meetings and summaries of testimony, are available at the office of the Joint Legislative Council, the Legislative Reference Bureau, and the State Historical Society in Madison. The staff of the Joint Legislative Council also prepares information bulletins that are available at the LRB. (Footnotes omitted.)

basis for denying the open enrollment petitions.[6] In his decision on appeal, the Superintendent cited WIS. STAT. § 118.51(12)(b)1. as the only basis for denying an open enrollment application due to undue financial burden. Section 118.51(12) provides in relevant part:

SPECIAL EDUCATION OR RELATED SERVICES.

. . . .

*(b) Undue financial burden.* 1. If the costs of the special education or related services required in the individualized education program [IEP] . . . for a child with a disability whose parent has submitted an [open enrollment] application . . . would impose upon the child's resident school district an undue financial burden in light of the resident school district's total economic circumstances . . . the child's resident school board may notify the child's parent and the nonresident school board by the first Friday following the first Monday in April that the pupil may not attend the nonresident school district to which the child has applied.

Thus, this section permits a school board to deny an application for transfer to a nonresident school district

---

[6] With respect to the financial burden on the district, the denial letter states:

[T]his application is also denied as approval of it would increase an undue financial burden on the residents of the Stockbridge School District. It would have a significantly negative impact on the expenses needed to operate the district. Its approval would cause the transfer of over $6,000 in state equalization aid to the nonresident district and increase the total transfer of aid to non-resident districts to more than $350,000 for the 2009–2010 school year.

The transfer of over $350,000 represents more than 30% of the equalization aid received by the district. This transfer would amount to the third greatest expenditure falling only behind salary and fringe benefit cost and account for 10% of 2009–2010 budgeted expenditures. Approval of this application is also denied on the basis that it would place an undue burden on resident taxpayers.

based on costs associated with the student's IEP. *Id.* It is undisputed that none of the students appealing the denial of his or her open enrollment application has a disability requiring such services.

¶ 12.    The School District challenges the Superintendent's interpretation that the financial burden analysis applies only to students who receive special education services. However, in doing so, the School District does not cite to any portion of the open enrollment statute which otherwise permits it to consider the financial burden on the district in granting or denying applications for transfer. Rather, the School District cites to Wis. Stat. § 118.001 which governs the duties and powers of school boards generally and advises that "[t]he statutory duties and powers of school boards shall be broadly construed."[7] However, as the Superintendent points out, § 118.001 goes on to state this is so if the school board action "is within the comprehensive meaning of the terms of the duties and powers" and "*if the action is not prohibited by the laws of the federal government or of this state.*" (Emphasis added.) We agree with the Superintendent that the School District's percentage limitation on resident transfers, which is not supported by statute, is in conflict with Wis. Stat. § 118.51(2) and, thereby, prohibited.[8]

---

[7] WISCONSIN STAT. § 118.001, titled, "Duties and powers of school boards; construction of statutes," provides:    "The statutory duties and powers of school boards shall be broadly construed to authorize any school board action that is within the comprehensive meaning of the terms of the duties and powers, if the action is not prohibited by the laws of the federal government or of this state."

[8] Both the Stockbridge School District and the amicus curiae explain at length the negative financial effect that the transfer of state aid is having, or will have, on smaller school

¶ 13. WISCONSIN STAT. § 118.51(2) permits a student to attend a nonresident school district under § 118.51. While § 118.51 imposes application requirements and some limitations, for example relating to racial balance and special education students under § 118.51(7) and (12)(b)1., there are no restrictions on resident transfers which are based on the overall financial health of the resident district.

¶ 14. Lending further support to the Superintendent's position is WIS. STAT. § 118.51(9), which permits a pupil's parent to appeal an application rejection if the resident school board "prohibits a pupil from attending public school in a nonresident district under sub. (6) [resident school district transfer limitations], (7) [racial balance] or (12)(b)1. [undue financial burden related to special education]." It stands to reason that this subsection, which sets forth the grounds for appeal, lists all statutorily recognized grounds for denial. Notably, the financial health of the resident school district is not among them. Similarly, § 118.51(3)(a)4. requires the resident school district to provide written notice to the applicant and nonresident school board if it denies an application for resident transfer "under sub. (6), (7) or (12)(b)1." The written notice must include the reason for the denial. Section 118.51(3)(a)4. Again these are the only statutorily recognized grounds for denial. If we were to accept the School District's contention that an application can be denied for undue financial burden, then it follows that a student denied on that ground would not be entitled to notice under § 118.51(3)(a)4. or the right to

districts. While we acknowledge this concern, we are bound by the language of the statute. *See Midwest Mut. Ins. Co. v. Nicolazzi*, 138 Wis. 2d 192, 201, 405 N.W.2d 732 (Ct. App. 1987) (It is not our function "to rewrite the statute or to bend it to our will if we feel its application is too harsh.").

appeal under § 118.51(9). There is nothing in § 118.51 to support the conclusion that the legislature intended to provide notice and the right to appeal to only certain students or, conversely, that the legislature intended to permit the denial of resident transfer applications on nonstatutory grounds without providing notice and the right to appeal. We therefore conclude that the School District's denial of the resident transfer applications on the grounds of undue financial burden is contrary to law and, as such, unreasonable.

¶ 15. Finally, the School District contends that the Superintendent's orders place an "untenable financial burden on the residents of the [d]istrict," so as to force the School District to be in violation of art. X, § 3 of the Wisconsin Constitution which requires the School District to provide a free education to all resident students. The Superintendent disputes the School District's claim, citing to *Vincent v. Voight,* 2000 WI 93, ¶¶ 57–61, 236 Wis. 2d 588, 614 N.W.2d 388, in which the court held that the constitution "only requires that each child receive an equal opportunity for a sound basic education." On that basic "floor" the "legislature can build additional opportunities," and the legislature has done so through the provision of district schools. *See id.,* ¶ 61. However, as the Superintendent points out, the constitution does not mandate the School District exist, rather it is a legislative creation, which by statute may reorganize through consolidation or dissolution. *See* Wis. Stat. §§ 117.105, 117.08, 117.09, 117.10. The criteria for reorganization include the consideration of the education welfare of the children residing in the affected district or districts and also the estimated fiscal effect of the proposed reorganization. *See* Wis. Stat. § 117.15(2), (4). Therefore, while we appreciate the School District's financial concerns, the

denial of open enrollment applications is not a statutorily authorized means of allaying them.

## CONCLUSION

¶ 16.   We conclude that the clear and unambiguous language of Wis. Stat. § 118.51(2) allows any public school student to attend a nonresident district and § 118.51(6) does not provide for a percentage limit on resident student transfers after the 2005–06 school year. We further conclude that neither Wis. Stat. § 118.001 nor the provisions of § 118.51 permit the denial of an open enrollment application on the grounds of undue financial burden. We therefore uphold the Superintendent's determination that the School District's denial of the eight resident transfer applications was contrary to law and, therefore, arbitrary and unreasonable. We affirm the order.

*By the Court.*—Order affirmed.