Donald J. ROLO, Petitioner-Respondent,

v.

H. David GOERS, Director, Winnebago Mental Health
Institute, Gerald Whitburn, Secretary, Department of
Health & Social Services and Wisconsin Department of
Health & Social Services, Respondents-Appellants,

Peter DESANTIS, Chief Executive Officer of North Cen-
tral Cummunity Services Program and North Central
Community Services Program, Respondents-
Respondents.

Supreme Court

*No. 91-2330. Oral argument November 4, 1992.—Decided
April 14, 1993.*

(Also reported in 497 N.W.2d 724.)

710

711

For respondents-appellants the cause was argued by *F. Thomas Creeron, III*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the petitioner-respondent there was a brief by *Kate Kruse Livermore* and *Legal Assistance To Institutionalized Person Program*, Madison and oral argument by *Ms. Kruse*.

For the respondents-respondents there was a brief (in the court of appeals) by *William C. Hess, Calvin R. Dexter* and *Hess, Daubert, Dexter and Reinertson, S.C.* and oral argument by *Calvin R. Dexter*.

WILLIAM A. BABLITCH, J.   A judgment of the circuit court for Winnebago County declared that the Department of Health and Social Services (DHSS) is responsible for funding the court ordered conditions of release for Donald J. Rolo (Rolo), an individual ordered conditionally released from the Winnebago Mental Health Institute (Institute). The DHSS appeals arguing that counties always have been and continue to be financially responsible for their residents on conditional release. We disagree. We hold that the DHSS bears the responsibility for funding the conditions of release for indigent persons conditionally released from mental health institutions pursuant to sec. 971.17(2), Stats. Accordingly, we affirm the circuit court.

712

We further conclude that this decision applies to those persons currently under orders for conditional release who are still institutionalized, as well as to those already in release programs presently funded by their counties who will have future expenditures requiring funding.

The relevant facts are undisputed. In January, 1989, Rolo, a Langlade County resident, was found not guilty of a felony by reason of mental disease or defect and committed to the Winnebago Mental Health Institute pursuant to sec. 971.17, Stats. 1987–88.[1] In July, 1989, Rolo was granted conditional release under sec. 971.17(2).[2] The conditions of Rolo's release included placement at a group home or residential facility that is able to monitor compliance with the administration of

---

[1] All references to sec. 971.17 Stats., will be to the 1987–88 bound volumes unless indicated otherwise. The legislature has amended and renumbered the section, but such amendments do not conclusively resolve the issue presented.

[2] Section 971.17(2), Stats., 1987–88 provides:

> A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department. Upon consent of all parties and approval by the court for good cause shown, testimony may be received into the record of a hearing under this subsection by telephone or live audiovisual means. If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department. Before a person is conditionally released by the court under this subsection, the court shall so notify the municipal police department and county sheriff for the area where the person will be residing. The notification requirement does not apply if a municipal department or county sheriff submits to the court a written statement waiving the right to be notified.

his medication. Neither the DHSS nor North Central Community Services Program (County) was willing to pay for the funding required to implement the conditions of Rolo's release, and as a result, Rolo remained at the Institute while the two entities debated the financial issue.

In May, 1991, almost two years after the court order for conditional release, Rolo filed a habeas corpus petition and request for declaratory and injunctive relief. Specifically, Rolo sought a declaration of liability for payment of his placement costs, an order requiring his placement in an appropriate setting, or an order for his unconditional release from Winnebago Mental Health Institute. The circuit court granted the declaratory judgment placing the financial burden on the DHSS for the cost of mental health care and placement set forth in the conditional release order. The DHSS appealed. We accepted the certification of this case from the court of appeals pursuant to sec. (Rule) 809.61, Stats., to resolve the following issue: "Is the Wisconsin Department of Health and Social Services or the county of residence obligated to fund court-ordered conditions of a sec. 971.17(2), Stats. 1987–88 release from the Winnebago Mental Health Institute?"

The DHSS argues that counties are statutorily obligated to provide transitional services such as group placement, residential treatment and associated mental health care to their residents under ch. 51, Stats., even if the recipient arrives at that situation through a criminal proceeding under sec. 971.17 and a later conditional release under sec. 971.17(2). The County argues that since the circumstances are criminal rather than civil mental health, ch. 51 does not apply to persons conditionally released under sec. 971.17(2). The County contends that the circuit court was correct in its decision

placing financial responsibility with the DHSS, pursuant to sec. 971.17(2). In addition, Rolo filed a brief in this case arguing that sec. 971.17(2) must be construed to place responsibility on some governmental entity to provide the funds necessary to effectuate the conditional release of indigent persons. According to Rolo, if a governmental entity is not held responsible, the provisions of the statute are rendered meaningless and unconstitutional. Rolo does not take a position as to which entity is financially responsible.

We agree with the County that under sec. 971.17, Stats., the DHSS is financially responsible to fund conditions set forth under an order for conditional release of an indigent person. Because we conclude that a statutorily mandated source for funding exists, we do not address Rolo's constitutional arguments.

Resolution of this action depends upon statutory interpretation of legislative mandates respecting financial responsibility for individuals conditionally released under sec. 971.17(2), Stats. Statutory construction is a question of law which this court decides *de novo* without deference to the decisions of the lower courts. *Eby v. Kozarek*, 153 Wis. 2d 75, 450 N.W.2d 249 (1990). "The cardinal rule in all statutory interpretation, as this court has often said, is to discern the intent of the legislature." *Scott v. First State Ins. Co.*, 155 Wis. 2d 608, 612, 456 N.W.2d 152 (1990). This court ascertains that intent by examining the language of the statute and the scope, history, context, subject matter and purpose of the statute. *Id. See also Employers Ins. of Wausau v. Smith*, 154 Wis. 2d 199, 226, 453 N.W.2d 856 (1990).

Section 971.17, Stats., provides in relevant part:

(1) When a defendant is found not guilty by reason of mental disease or defect, the court shall order him

715

to be committed to the department to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section.

**(2)** A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16).... If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.[3]

Subsection (1) of the statute provides that a person is committed *to the department* for the appropriate custody, care and treatment *until discharged.* The DHSS concedes that persons committed under sec. 971.17 are originally its responsibility, and it is liable for the cost while a person is committed to it for placement in an appropriate institution. The DHSS argues, however, that conditional release terminates a person's commitment to the DHSS, thus relieving it of any financial responsibility for further care, custody or treatment. We disagree. The DHSS's interpretation of the statute is inconsistent with the language found in subsection (2) which provides that a court "shall order the discharge of the defendant *or* order his or her ..." conditional release. Section 971.17(2) (emphasis added). Under sec. 971.17(2), conditional release is made an alternative to discharge, thus indicating that an individual conditionally released is not "discharged" and therefore remains the DHSS's responsibility. Section 971.17(2) mandates conditional release if the person, who would still be under commitment to the DHSS, may be safely released

---

[3] Pursuant to sec. 967.02(2), Stats., 1987-88 "Department" "means the department of health and social services."

716

on conditions. As the circuit court in this case indicated, the necessary implication of sec. 971.17 is that the DHSS must bear the financial responsibility for the conditional release.

Moreover, that the DHSS is financially responsible during the entire period of commitment makes sense in light of the following facts: (1) the State made the decision to charge the person with a criminal offense; (2) the State tried the person for the criminal offense; (3) the State, through the state court system, ordered the person committed to the DHSS; and (4) the person remains under the custody, care and treatment of the State (i.e., the DHSS) until discharged.

In addition, the purpose behind conditional release supports our conclusion that the statutory provision which provides for release, sec. 971.17, Stats., also provides for the entity which is financially responsible. *See Belleville State Bank v. Steele*, 117 Wis. 2d 563, 570, 345 N.W.2d 405 (1984) ("Our court has said that an interpretation which fulfills the objectives of the statute is favored over an interpretation which defeats the objectives of the legislature.") By its very provisions, it is evident that the conditional release statute is, at least in part, a legislative judgment that it is beneficial to society and to individuals in institutions to move people out of institutions into community group homes where they can obtain help in adjusting to life outside the institution. If the statute did not provide for conditional release, people would reach their mandatory release dates and be released into the community with no help whatsoever. We agree with Rolo that in enacting the conditional release provisions of sec. 971.17(2), the legislature must have provided for some governmental entity to fund residential placements and other services, or the entire process would be rendered meaningless for many

717

of the criminal committees who are indigent. We conclude that the legislative mandate is provided in sec. 971.17 where the legislature provided for commitment to the *department* (DHSS) for custody, care and treatment until discharged. As explained above, a conditionally released person is not discharged. Thus, the entity to which the person is committed, the DHSS, is financially responsible for funding the conditions of release for indigent persons.

To support its contention that conditional release terminates a person's commitment to the DHSS, the DHSS cites sec. 971.17(3), Stats., which provides that if a person's conditional release is revoked, "the court shall immediately order the person *recommitted* to the department, subject to discharge or release only in accordance with sub. (2)." (Emphasis added). The DHSS argues that this statutory provision indicates that persons on conditional release are not committed to the DHSS during their release, otherwise recommitment would not be required. At the very least, according to the DHSS, the use of the term recommitment creates an ambiguity in the statute. We disagree. Any possible ambiguity created by the use of the term recommitment in sec. 971.17(3) was removed by the Judicial Council Note to the 1989 amendment which states that the subsequent revision "clarifies" that a conditional release is a form of commitment. Judicial Council Note, *Comments—1989 act 334*, Wis. Stat. Ann. 971.17 (West). The implication of this "clarification" is that conditional release and commitment were equated in 1987–88 as well. Given this expression of legislative intent and the fact that sec. 971.17(2) explicitly refers to discharge as an alternative to conditional release, the term recommitment must be read as a revocation of the conditional release that results in the return of the person to the

institution and a reaffirmation of an existing commitment.

This interpretation of the statute is supported by the court of appeals' decision in *State ex rel. Helmer v. Cullen*, 149 Wis. 2d 161, 440 N.W.2d 790 (1989). In *Helmer*, a conditionally released person (Helmer) challenged the DHSS's determination of the maximum length of his sec. 971.17, Stats., commitment period. Specifically, Helmer argued that the DHSS lacked the authority to calculate his mandatory release date based on consecutive terms because the circuit court committed him for concurrent terms. The court of appeals held that the circuit court had no authority to limit the maximum period of commitment to a period which is shorter than the maximum term as properly calculated by the DHSS. In so holding, the court emphasized that a defendant is statutorily committed until *discharged as provided in this section. Id.* at 164. If commitment to the DHSS ends when a person is conditionally released, Helmer had no reason to challenge the maximum period of his commitment, as he was already on conditional release. Thus, the court of appeals' opinion assumes that conditional release is a continuation of the commitment.

In addition, the use of the term "recommitment" in sec. 971.17(2), Stats., supports our interpretation of the statute. Section 971.17(2) provides that if upon application for reexamination and conditional release the court is not satisfied that the defendant may be safely discharged or released the court "shall recommit him or her to the custody of the department." In this situation, where a motion for conditional release or discharge is filed, the committed person has never left the state institution. Thus, the term "recommitment" must mean merely a reaffirmation of commitment, as it cannot reasonably be argued that a person is no longer committed,

719

although still in the institution, merely upon filing a motion for conditional release.

The DHSS's primary arguments concerning the County's financial responsibility for conditions of release stem from an opinion of the Attorney General. *See* 79 Opinion of the Attorney General 181 (1990). This court is not bound by the Attorney General's opinion. *Wis. Senate v. Thompson*, 144 Wis. 2d 429, 460, 424 N.W.2d 385 (1988). "The opinion is entitled only to such persuasive effect as this court deems it warrants." *Id.* In this case, we reject the Attorney General's opinion that certain provisions of ch. 51, Stats., mandate that the County is "financially responsible for providing mental health services through its human services agency to residents conditionally released under section 971.17, Stats." 79 Op. Att. Gen. 181 (1990).

The Attorney General reasoned, and the DHSS argues that:

> 'the legislative pattern appears to be to make the Department responsible for the direct delivery of services only in state institutions and for nonresidents; and to make counties responsible for delivery of services to their residents under state supervision.' 79 Opinions of the Attorney General 181, 183 (1990) (citing 66 Op. Att'y Gen. 249, 252 (1977)).

In support of this conclusion, the Attorney General and the DHSS cite secs.51.42(3)(as)1 and 51.42(1)(b), Stats., which provide respectively in relevant part:

> 51.42(3)(as)1. A county department of community programs may not reimburse any state institution or receive credit for collections for care received therein by nonresidents of this state, interstate compact clients, transfers under s. 51.35(3), and transfers from Wisconsin state prisons under s. 51.37(5)(1), com-

720

mitments under s. 971.14, 971.17, 975.01, 1977 stats., 975.02, 1977 stats., 975.06 or admissions under s. 975.17, 1977 stats., or children placed in the guardianship or legal custody of the department of health and social services under s. 48.355, 48.427 or 48.43.

51.42(1)(b) *County liability.* The county board of supervisors has the primary responsibility for the well-being, treatment and care of the mentally ill, developmentally disabled, alcoholic and other drug dependant citizens residing within its county . . ..

The Attorney General and the DHSS reason that the lack of reimbursement for care in an institution for a sec. 971.17 commitment coupled with the general provision which provides that the County is responsible for the care of the "mentally ill" implies that the County is liable for all care which is not provided in a state institution, including conditional release care. However, as the circuit court in this case noted, "[s]uch implication could only arise, if it arises at all, if the funding provisions of ch. 51, the Mental Health Act, apply to a defendant committed under sec. 971.17." We conclude that they do not.

This court has consistently concluded that criminal and civil commitments are not substantially the same. *See In Interest of J.A.L.*, 162 Wis. 2d 940, 471 N.W.2d 493 (1991); *State v. Smith*, 113 Wis. 2d 497, 335 N.W.2d 376 (1983); *State v. Gebarski*, 90 Wis. 2d 754, 763–64, 280 N.W.2d 672 (1979). The purpose of ch. 51, Stats., is expressed in sec. 51.001:

(1) It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provi-

sion of services which will assure all people in need of
care access to the least restrictive treatment alterna-
tive appropriate to their needs, and movement
through all treatment components to assure con-
tinuity of care.

The criteria for voluntary admission of an adult to an
inpatient treatment facility under ch. 51 is "an evalua-
tion that the applicant is mentally ill or developmentally
disabled, or is an alcoholic or drug dependent and that
the person has the potential to benefit from inpatient
care, treatment or therapy." Section 51.10(4). An invol-
untary commitment pursuant to sec. 51.20(1) requires a
showing that the subject is mentally ill, as defined in sec.
51.01(13)(b), and a proper subject for treatment, as well
as dangerous to self or others.

In contrast, a sec. 971.17(1), Stats., commitment is
not based on a finding of present mental illness. Rather,
an individual found not guilty by reason of mental dis-
ease or defect is mandatorily committed. *See State v.
Field*, 118 Wis. 2d 269, 347 N.W.2d 365 (1984). In addi-
tion, unlike ch. 51 voluntary commitments, the sole
standard set forth in sec. 971.17(2) for conditional
release is whether the individual can be safely discharged
or conditionally released. Thus, whether the defendant is
or is not mentally ill is irrelevant in both the initial
mandatory commitment stage, and upon reexamination
under sec. 971.17(2). *See Gebarski*, 90 Wis. 2d at 763–64;
*but see Foucha v. Louisiana*, 112 S. Ct. 1780, 1784
(1992) ("the acquitee may be held as long as he is both
mentally ill and dangerous, but no longer.") Thus, the
purpose of sec. 971.17 commitment appears to be prima-
rily a concern for the protection of the public, not treat-
ment to alleviate mental illness. The different procedural
aspects of the statutes and their different purposes
reveal the boundaries between the mechanisms of their

operation, and, by implication, between the intended source of their financial support. Both secs. 51.42(1)(b) and 971.17 begin with a statement of responsibility. Section 51.42(1)(b) gives the county the primary responsibility "for the well being, treatment and care" of the mentally ill, developmentally disabled, alcoholic and other drug dependent persons. Section 971.17 similarly charges the DHSS with the responsibility for "custody care and treatment" of persons found not guilty by reason of mental disease or defect. Conditional release is merely an extension of state-funded institutionalization for criminal commitments to the DHSS; it is not a form of county-funded treatment for civil commitments.

For the reasons set forth above, we hold that the DHSS is financially responsible to fund conditions of release for indigent persons committed under sec. 971.17, Stats.

The DHSS argues that a decision in this case in favor of the County should be applied purely prospectively. "Prospective application of a judicial holding is a question of policy." *Harmann v. Hadley*, 128 Wis. 2d 371, 378, 382 N.W.2d 673 (1986). In addition, "the equities peculiar to a given rule or case determine the rule adopted by the court." *Id.* at 379. Retrospective application may be denied when there has been great reliance on an overruled decision by a substantial number of persons and considerable harm or detriment could result to them, when the purpose of the new ruling cannot be served by retroactivity or when retroactivity would thrust an excessive burden on the administration of justice. *Id.* at 380.

Keeping these principles in mind, we conclude that our decision in this case is prospective to the extent that our opinion does not apply retrospectively to require the DHSS to reimburse the counties for monies it has

already expended on conditional release services. However, in addition to persons conditionally released in the future, our opinion applies to those persons currently under orders for conditional release who are still institutionalized, as well as to those already in release programs presently funded by their counties who will have future expenditures requiring funding.

We conclude that our opinion should not require the DHSS to reimburse the County for monies already expended because: (1) the issue in this case was one of first impression and in essence creates a new rule of law; (2) prior to this case the only legal opinion concerning the issue, 79 Op. Attorney General 181, reached a contrary conclusion to that of this court; and (3) according to counsel, prior to this case counties have funded conditional release. Retrospective application of this opinion requiring reimbursement would likely burden the administration of justice in that it would spur litigation concerning past funding arrangements for conditional release. However, given the variety of funding and placement circumstances, we conclude that a general rule of pure prospective application is not equitable in this case. In *Harmann*, we noted that inequity may result if a decision is purely prospective applying only to future conduct. *Harmann*, 128 Wis. 2d at 382. We concluded that the plaintiffs in *Harmann* were entitled to the benefit of a new law that the court had established while the Harmanns were in the process of litigating the issue. *Id.* at 384–85. In this case, Rolo and other committed individuals who were granted conditional release but remain in the institution have endured institutionalization awaiting the delays and uncertainties of this litigation. They are entitled to the benefit of the decision in this case, as are those individuals already conditionally released who may have future expenditures.

The relief requested by Rolo is a declaration of liability for payment of his costs for conditional release. We affirm the circuit court's judgment declaring that the DHSS bears the financial responsibility for funding the conditions of release for indigent persons conditionally released from mental health institutions pursuant to sec. 971.17(2), Stats.

*By the Court.*—The decision of the circuit court is affirmed. Rights Declared.