In the Matter of the Alternative Placement of
Billy Lee Morford:

State of Wisconsin, Appellant,

Billy Lee Morford, Intervenor,

v.

Milwaukee County, Respondent.

Court of Appeals

*No. 2005AP1697. Submitted on briefs August 1, 2006.*
*—Decided October 17, 2006.*

2006 WI App 229

(Also reported in 724 N.W.2d 916.)

340

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Rebecca F. Dallet*, assistant district attorney, *E. Michael McCann*, district attorney and *Peggy A. Lautenschlager*, attorney general.

On behalf of the intervenor, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John F. Jorgensen*, principal assistant corporation counsel and *William J. Domina*, corporation counsel of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. The State, by the Milwaukee County District Attorney, filed a motion seeking an order directing Milwaukee County to build or acquire a facility in which to house Billy Lee Morford, who has been committed, since July 1997, under WIS. STAT. ch. 980 (2003–04)[1] as a "sexually violent person" who "suf-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

fers from a mental disorder that makes it likely that the person will engage in acts of sexual violence."[2] Morford has also twice been found suitable for supervised release under WIS. STAT. § 980.08(4)(b)[3] or its predecessor statute. Morford has been housed in a "temporary" facility since June 2003, because the State has been unable to find suitable living facilities for him in Milwaukee County or elsewhere.

¶ 2. Attempts to locate permanent suitable residential placement for Morford have now been presided over by at least five different judges[4] for seven years.[5] Searches have been conducted, consultants hired and

---

[2] WISCONSIN STAT. § 980.01 provides in relevant part:

(7) "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence.

[3] WISCONSIN STAT. § 980.08 provides:

(4)(b) The court shall grant the petition unless the state proves by clear and convincing evidence one of the following:

1. That it is still likely that the person will engage in acts of sexual violence if the person is not continued in institutional care.

2. That the person has not demonstrated significant progress in his or her treatment or the person has refused treatment.

[4] The Honorable Jeffery A. Kremers, Daniel L. Konkol, John A. Franke, Mary M. Kuhnmuench, and David A. Hansher have presided over multiple proceedings. The docket sheet reflects that five other judges have presided over an isolated matter from time to time.

[5] The unsuccessful search for suitable residential placement began in 1999 when Morford was first found eligible for supervised release.

fired, money appropriated and unspent, committees appointed and public hearings held. To date, no suitable permanent residential placement has been located.

¶ 3. The trial court concluded that Wis. Stat. § 980.08(5) relied on by the State to attempt to force the County to acquire or construct a facility did not require the County to shoulder that responsibility. Indeed, the trial court concluded that § 980.08(5), when properly read, actually requires the State Department of Health and Family Services (DHFS) to provide the housing facility. The court found "that there does not presently exist any residence in Milwaukee County that Mr. Morford can be moved to." The search for an appropriate residential placement is marked by the failure of the State, the failure of a Blue Ribbon committee appointed by the Honorable Mary M. Kuhnmuench, and the failure of a legislatively-created commission to find another residence for Morford or to find a place in Milwaukee County where a residential facility could be built to house persons on supervised release under Wis. Stat. ch. 980. The trial court concluded that "until a facility to house these Chapter 980 detainees is built here in Milwaukee, he is accepted elsewhere in the State on a permanent basis, or the present placement criteria and requirements of Chapter 980 are changed by the legislature," there was "nothing more this court can do" and denied the State's motion to compel Milwaukee County to build a facility to house Morford. The State appealed.

¶ 4. Morford participates in this appeal for the purpose of urging the court to order some entity to provide the appropriate permanent residential placement that is required by Wis. Stat. ch. 980. Morford, joined by the State, filed a petition to bypass the court of appeals and have the Wisconsin Supreme Court resolve the issues in this case. The petition was denied.

¶ 5. As our supreme court has observed, Wis. Stat. § 980.12 requires DHFS to pay "for all costs relating to the evaluation, treatment and care of persons evaluated or committed under this chapter." Sec. § 980.12(1); *State v. Schulpius*, 2006 WI 1, ¶ 42 n.11, 287 Wis. 2d 44, 707 N.W.2d 495, *cert. denied*, 126 S. Ct. 2042 (2006); *State v. Sprosty*, 227 Wis. 2d 316, 336, 595 N.W.2d 692 (1999). The responsibility for "care of persons . . . committed" under Wis. Stat. ch. 980 includes providing housing. Wis. Stat. § 980.08(4); *Sprosty*, 227 Wis. 2d at 326. Section 980.08(6m) establishes that an order for supervised release "places the person in the custody and control" of DHFS. Therefore, we affirm the trial court's conclusion and remand for further proceedings consistent with this opinion.

## Background

¶ 6. The procedural history of this case encompasses nine years, two previous appeals, two petitions for bypass to the Wisconsin Supreme Court, one supreme court decision, and this appeal. An overview of this history, though long, is instructive in demonstrating the significant difficulties encountered by both the State and Milwaukee County in implementing Wis. Stat. ch. 980.

¶ 7. On July 31, 1997, Morford was committed to a locked institution after being committed as a sexually violent person under the provisions of Wis. Stat. ch. 980. On January 11, 1999, this court summarily reversed an earlier trial court order committing Morford to the institution because no halfway house was available, although the trial court found that "placement in a halfway house would be appropriate." *State v. Morford*, No. 97–3276, unpublished slip op., 2 (Wis. Ct. App. Jan. 11, 1999). At that time, this court observed that "[t]he State, the defense and the court all agreed that super-

345

vised placement in a halfway house would be appropriate. However, the Department of Corrections had not located a halfway house that would accept Morford." *Id.* As this court noted at that time, it was "evident from the record that the *only* reason the circuit court ordered Morford committed to the [institution] is because no halfway house was available" and that this reason was not a sufficient reason to avoid residential placement. *Id.* at 3 (emphasis in original). On remand, the trial court promptly ordered the DHFS to "develop a plan for supervised release" of Morford, and to present the plan to the court on September 30, 1999.

¶ 8. On September 29, 1999, DHFS made its first of many requests for more time to complete the plan because "the only issue needing to be resolved is that of residential placement." By December 1999, residential placement still had not been found. Nonetheless, DHFS requested "release" of Morford to Rock Valley Correctional facility in south central Wisconsin. This prompted a motion to dismiss[6] the proceedings and release Morford, who was still being held at the locked institution which we had already ruled was improper. Still finding no residential housing, the State continued to seek extensions in order to continue "the process of investigating a potential residence in Milwaukee County." On March 29, 2000, DHFS submitted a plan indicating that it had located an apartment for Morford. However, by April 25, 2002, DHFS told the court that because of "recent actions by the City of Milwaukee" they could no longer "comply with the plan submitted." The City cited building code violations as an impediment to placement of Morford in that facility.

---

[6] The motion to dismiss was denied on September 27, 2000.

¶ 9. Still having failed to provide residential placement for Morford, in May 2000, the State asked the court to reconsider and to withdraw the earlier order for supervised release. Two months later, on July 28, 2000, the court ordered another re-evaluation of Morford "for the purpose of determining whether he is suitable for supervised release." Neither examiner appointed by the court recommended continued confinement; both appeared to conclude that supervised release was appropriate. However, the court granted the motion to reconsider, and ordered Morford returned to the locked institution.[7] Again, Morford appealed. We affirmed. *State v. Morford*, No. 01AP2461, unpublished slip op. (WI App Nov. 19, 2002, *per curiam*).

¶ 10. After additional re-examination, in September 2002, Morford again petitioned for supervised release. After an evidentiary hearing, on November 27, 2002, the court again found that Morford "was appropriate for supervised release" and ordered DHFS and "the county department under § 51.42"[8] to "prepare a Supervised Release Plan." The plan was to be presented to the court within sixty days. Again, DHFS reported that it was unable to locate a residence and asked for an additional sixty days.

¶ 11. In April 2003, DHFS submitted a treatment plan that included a residence "in the northwest city of Milwaukee" that would be available for occupancy at the end of May. The plan document did not publicly

---

[7] Morford's "return" is illusory; the record does not establish that he had been released at this time, even to "temporary" residential placement.

[8] WISCONSIN STAT. § 51.42 establishes civil mental commitment procedures and designates the county department of human services to do certain things in connection with such commitments.

disclose the address of the proposed placement. The court approved the plan, and ordered Morford's supervised release and commitment "to the Department of Health and Family Services" pursuant to the approved plan. Morford was promptly moved into the residence.

¶ 12. Subsequently, the office of the Milwaukee County District Attorney appeared to oppose the already approved DHFS plan,[9] citing communication from a County Supervisor. The District Attorney asked the court to delay Morford's release so that it could further investigate the residence (which had already been investigated and approved by both the DHFS and the Department of Corrections) to determine "the proximity of families with children, schools and parks." Thereafter, the District Attorney asked to have Morford immediately removed from the approved placement, and to require DHFS to "retain custody" of Morford until DHFS submits an appropriate placement location.

¶ 13. After additional hearings on June 16 and 23, 2003, the court modified its approval of the residence to approval "only as a temporary placement" but refused to remove Morford. The court ordered DHFS to "[p]roceed forthwith to find a more appropriate residential placement for [Morford]," to submit a proposed placement in thirty days, and to report the search activities weekly. Three days later, DHFS submitted a report of its activities, apparently from the inception of its search for a residence for Morford. The report is six pages long, single spaced, and discloses a variety of activities with numerous agencies, both public and private. The search includes property available for rent or for purchase. In a paragon of understatement, discussing the problems

---

[9] Until this time, and during the approval of the plan, the District Attorney supported DHFS on behalf of the State.

created by advance public disclosure of possible placement locations as required by WIS. STAT. § 980.08(6m),[10] DHFS, in a report to the trial court, observed:

> The Court has raised the possibility of disclosing the address in order to facilitate community input into the assessment of a potential residence . . . . [T]his process may impact the Department's ability to acquire the property. Furthermore, it appears unlikely that any community or neighborhood would readily endorse or accept such a residential placement. Thus, the advance disclosure of a potential residence may significantly delay the identification and implementation of an alternative "more appropriate" placement . . . .

¶ 14. The DHFS observation proved prophetic. Although on August 1, 2003, it appeared that the problem of residential placement might be resolved, and the trial court approved a DHFS plan which involved purchase of a specific residence, this was short-lived. After disclosing the address as it was statutorily required to do, DHFS met with the local police department. Thereafter, with local media reports identifying the property to be acquired, the owner withdrew the property from the market.

¶ 15. The trial court then ordered DHFS to provide reports every two weeks on its efforts to locate permanent housing for Morford, and further directed counsel not to disclose any addresses being considered except within their own offices for purposes of investigating the proposed residence. The District Attorney's office objected to the non-disclosure order. DHFS con-

---

[10] WISCONSIN STAT. § 980.08(6m) provides: "[b]efore a person is placed on supervised release by the court under this section, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing."

tinued its search, first filing reports twice monthly with the trial court (August 29, 2003), then monthly from December 12, 2003 through May 11, 2004.

¶ 16. In September 2003, DHFS reported it had found a rental property in "an isolated industrial area with the nearest school or childcare facilities located 0.9 miles from the residence." The house had no sidewalks, parks or other places where children might congregate nearby. None of the neighbors in close proximity had children living with them, and DHFS reported that the owner's preliminary discussions with the neighbors and area business owners raised no objections. At the request of the District Attorney, DHFS disclosed the address on September 5. By that same evening of September 5, "the community and elected local officials [had] organized in protest of this residence . . . and focused their protest on the property owner," including organizing a "Child Molester Protest" and "rally" at the property owner's home, and demands through the media for an apology from the property owner for offering the property. This frenzy of activity, predictably, resulted in the property owner informing the Department that he was no longer interested in renting the property.

¶ 17. Several months passed during which DHFS was unable to report on any leads for either rental or purchase of a residence for Morford. Morford remained in the "temporary placement."

¶ 18. In January 2004, DHFS identified a possible residence for purchase, and advised the court that if the court approved the site, the State Building Commission must then approve any purchase of real estate. The court approved the proposal. The State Building Commission decided to ask for an opinion from the Attorney General before approving the purchase, with the result that the

deadline in the offer to purchase passed before the State approved the purchase. The seller was unwilling to extend the deadline.

¶ 19. In February 2004,[11] the trial court appointed a Blue Ribbon committee to hold public hearings and report on possible residential locations for Morford. The legislature also established a commission[12] to "assist the state in determining the location" for a transitional facility for WIS. STAT. ch. 980 persons moving to supervised release or release. Neither the court-appointed Blue Ribbon committee nor the legislative commission was able to provide any residential locations. The legislative commission discussed the possible use of two parcels of land owned by Milwaukee County and adjacent to the county owned and operated House of Corrections. That discussion prompted a letter from the Milwaukee County Executive informing the commission that neither parcel would be available for such a facility. The letter was promptly followed by a County Board resolution stating the County Board would not consider the sale of county-owned land for such a facility.

¶ 20. Nine months later, on November 5, 2004, pursuant to the provisions of WIS. STAT. § 980.08(5), the trial court ordered DHFS to arrange for another county other than Milwaukee to prepare a plan for placement of Morford in that county. Without having discussed the matter with local officials, the plan DHFS submitted in

[11] The record does not contain a transcript of those proceedings, nor a copy of an order identifying the precise charge to or the members of the committee. However, its activities were public and widely reported in the local media.

[12] The Legislature created The Sexually Violent Persons Transitional Facility Siting Advisory Committee in 2003 Wis. Act 187.

response to this order proposed placement, "for up to one year or until a permanent residence in Milwaukee can be established for Mr. Morford, whichever comes first," in Door County, in the Sturgeon Bay area. The trial court rejected this temporary placement in Door County, describing it as neither "acceptable nor a solution" because it would:

> merely put the onus of finding a new place to house Mr. Morford on the courts next year after his return from Door county. The Courts are responsible only for approving placement, not building a facility to house Chapter 980 detainees, or finding another residence for Mr. Morford in Milwaukee County.

Thereafter, as we earlier explained,[13] the State moved to compel Milwaukee County to provide a more appropriate residential placement or to build a facility. The trial court refused. This appeal followed.

## Standard of Review

¶ 21. We review statutory construction *de novo*. *Hutson v. Wisconsin Personnel Comm'n*, 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely

---

[13] ¶¶ 1–3, *supra*.

related statutes, and reasonably so as to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48; *State v. Delaney*, 2003 WI 9, 13, 259 Wis. 2d 77, 658 N.W.2d 416; *Landis v. Physicians Ins. Co. of Wis.*, 2001 WI 86, 16, 245 Wis. 2d 1, 628 N.W.2d 893; *Seider v. O'Connell*, 2000 WI 76, 43, 236 Wis. 2d 211, 612 N.W.2d 659.

## Discussion

¶ 22. Chapter 980 creates a civil commitment procedure primarily intended to provide treatment and protect the public, not to punish the offender. *State v. Carpenter*, 197 Wis. 2d 252, 258, 541 N.W.2d 105 (1995). WISCONSIN STAT. ch. 980 specifically defines "Department" as "the department of health and family services" (hereafter DHFS),[14] and "sexually violent person" as "a person who has been convicted of a sexually violent offense" and "who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence."[15] The court is required by statute to order supervised release unless the State proves by clear and convincing evidence either "[t]hat it is still likely that the person will engage in acts of sexual violence if the person is not continued in institutional care" or "[t]hat the person has not demonstrated significant progress in his or her treatment or the person has refused treatment."[16]

---

[14] *See* WIS. STAT. § 980.01(1).

[15] *See* WIS. STAT. § 980.01(7).

[16] *See* WIS. STAT. § 980.08(4)(b)(1) and (2).

¶ 23. If supervised release is granted under Wis. Stat. § 980.08(4), DHFS is notified. An order for supervised release "places the person in the custody and control" of DHFS, which must arrange for the care and treatment of the released person in "the least restrictive manner consistent with the requirements of the person and in accordance with the plan for supervised release approved by the court . . . ." *See* Sec. 980.08(6m). DHFS and the county are required to "prepare a plan that identifies the treatment and services, if any, that the person will receive in the community." *See* Sec. 980.08(5). The plan is to address the need "for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment." *Id.* When planning for the person's residence, DHFS "shall consider the proximity of any potential placement to the residence of other persons on supervised release and to the residence of persons who are in the custody of the department of corrections . . . ." *Id.*

¶ 24. DHFS is required to pay for "all costs relating to the evaluation, treatment and care of persons evaluated or committed under this chapter."[17] The committed person's county of residence is only required by statute to pay the costs of the independent experts appointed by the court for the committed person at the time of initial commitment and later re-evaluations.[18]

---

[17] Wisconsin Stat. § 980.12 provides: **"Department duties; costs. (1)** Except as provided in ss. 980.03 (4) and 980.08 (3), the department shall pay from the appropriations under s. 20.435 (2) (a) and (bm) for all costs relating to the evaluation, treatment and care of persons evaluated or committed under this chapter."

[18] Wisconsin Stat. §§ 980.03(4) and 980.08(3) require the county of residence of a person involved in a ch. 980 commit-

Although a county may contract with DHFS "to provide the treatment and services identified in the plan," WIS. STAT. § 980.08(5), we find no payments statutorily imposed on the county of residence by WIS. STAT. ch. 980 in implementation of supervised release.

¶ 25. The District Attorney argues that because of the statutory requirement that the county be involved in preparing the plan for supervised release, the county is also responsible for finding or building a residence if ordered to do so by the court. The State argues that the authority for the court's power to issue such an order is based upon one of the supreme court's holdings in *Sprosty*, 227 Wis. 2d at 316. In *Sprosty*, the court declared: "[W]e hold that a circuit court has the authority under WIS. STAT. § 980.08(5) to order a county, through DHFS, to create whatever programs or facilities are necessary to accommodate an order for supervised release." *Sprosty*, 227 Wis. 2d at 331. Milwaukee County responds that the legislature amended the relevant statute after the *Sprosty* decision to clarify that DHFS, not the county, is the entity responsible for providing a supervised release facility. It also argues that ordering the county to do what is actually the responsibility of DHFS is not a reasonable or practical solution to the problem here.

¶ 26. Although it appears clear from the totality of the holdings in *Sprosty* that "the department," that is DHFS, is the entity responsible for providing housing for persons on supervised release, the legislative changes and the recent decision of the Wisconsin Su-

ment proceeding to pay the cost of the independent medical evaluation to which the person is entitled at the initial proceeding and in some situations involving a petition for supervised release.

preme Court in *State v. Schulpius*, 2006 WI 1, 287 Wis. 2d 44, 707 N.W.2d 495, *cert. denied,* 126 S. Ct. 2042 (2006),[19] underscore that responsibility.

¶ 27. Statutory interpretation " 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *Kalal,* 271 Wis. 2d 633, ¶ 45 (citation omitted). The plain language of the statute requires DHFS, as "the department," to pay for the "treatment and care" of persons committed under WIS. STAT. ch. 980. WIS. STAT. § 980.12(1). On supervised release, the person remains in the "custody and control" of DHFS. WIS. STAT. § 980.08(6m). The only responsibility assigned to the county is involvement in preparing the plan. Sec. 980.08(5).

¶ 28. We may, on occasion, consult legislative history to show how that history supports our interpretation of a statute otherwise clear on its face. *Megal Dev. Corp. v. Shadof,* 2005 WI 151, ¶ 22, 286 Wis. 2d 105, 705 N.W.2d 645. After the decision in *Sprosty,* the legislature added the following language to WIS. STAT. § 980.08(5).

> The *department* shall make its best effort to arrange for placement of the person in a residential facility or dwelling that is in the persons [sic] county of residence, as determined by the department under § 980.105 . . . . In developing a plan for where the person may reside while on supervised release, the *department* shall consider the proximity of any potential placement to the residence of other persons on supervised release and to

---

[19] *State v. Schulpius,* 2006 WI 1, 287 Wis. 2d 44, 707 N.W.2d 495, was decided after briefing in this case was completed.

the residence of persons who are in custody of the department of corrections and regarding whom a sex offender notification bulletin has been issued to law enforcement agencies under § 301.46(2m)(a) or (am).

2001 Wis. Act 16 (emphasis added).

¶ 29. In addition, the legislature specifically did not adopt a proposal in the state senate version of the budget bill which would have required the county to find placements for all persons granted supervised release under WIS. STAT. ch. 980. *See* 2001 S.B. 55, S. Amendment 2 to S. Amendment 1, § 4034ycr. The post-*Sprosty* legislative history confirms our conclusion that the plain language of WIS. STAT. § 980.08(5) places the responsibility squarely on DHFS for locating and funding residential placement for persons on supervised release.

¶ 30. On several prior occasions the Wisconsin Supreme Court has discussed the problem of state and county financial responsibility for persons involved in the criminal justice system who also have been committed for treatment of a mental illness and who a court has found appropriate for a community placement status.[20] The issue arose in a very similar statutory

---

[20] In a number of reported cases, persons who have been found suitable for a supervised community placement status have, nonetheless, been detained in locked institutions for months or even years because of delays by DHFS in finding suitable housing facilities for the individual. *See Schulpius*, 287 Wis. 2d 44, (although detained from 1996 to 2000 after court finding supervised release was appropriate, the court ultimately found Schulpius to no longer be eligible for supervised release due to his lack of treatment progress noted in subsequent psychological reports); *State v. Sprosty*, 227 Wis. 2d 316, 595 N.W.2d 692 (1999) (trial court order for supervised release in October 1996 rescinded approximately June 1997 because ap-

context in 1993, in *Rolo v. Goers*, 174 Wis. 2d 709, 497 N.W.2d 724 (1993). Mr. Rolo had been found not guilty of a criminal offense by reason of mental disease or defect, had been committed to an institution under WIS. STAT. § 971.17, and was later ordered conditionally released. *Rolo*, 174 Wis. 2d at 713. However, neither the State nor the county was willing to fund the conditions of release imposed by the court. *Id.* at 714. The impasse left Mr. Rolo confined in an institution. *Id.* at 715. The trial court declared that the State, specifically the Department of Health and Social Services (DHSS),[21] was responsible for funding the conditions of release. *Id.* at 714. DHSS appealed, arguing that counties are financially responsible for residents' mental health needs under WIS. STAT. ch. 51 and, therefore, the county should pay the costs of conditions of release under § 971.17. *Rolo*, 174 Wis. 2d at 714. Our supreme court disagreed, holding that "DHSS bears the responsibility for funding the conditions of release for indigent persons conditionally released from mental health institutions pursuant to sec. 971.17(2)." *Rolo*, 174 Wis. 2d at 712. In reaching that conclusion, the court observed that the statutes made conditional release an alterna-

propriate facility could not be located; order reversed by court of appeals and affirmed by supreme court); *Rolo v. Goers*, 174 Wis. 2d 709, 497 N.W.2d 724 (1993) (detained from 1989 to 1991 after court finding that WIS. STAT. § 971.17(2) supervised release was appropriate). The court of appeals has also addressed this issue. *See State v. Schulpius*, 2004 WI App 39, 270 Wis. 2d 427, 678 N.W.2d 369; *State v. Krueger*, 2001 WI App 76, 242 Wis. 2d 793, 626 N.W.2d 83 (detained November 1998 through April 1999 after court finding supervised release was appropriate).

[21] The Department of Health and Social Services was later named the Department of Health and Family Services. For purposes relevant to this appeal, the department functions are the same under either name.

tive to discharge, and the person not having been discharged remained the responsibility of DHSS. *Id.* at 716.

¶ 31. Both the status of conditional release and the procedure involved in WIS. STAT. § 971.17[22] are substantially similar to the supervised release provisions in a WIS. STAT. ch. 980 commitment. Under both WIS. STAT. §§ 980.08 and 971.17, the person is initially committed to the custody of DHFS, and under both statutes conditional release/supervised release is an alternative to discharge/release from all supervision. Like § 971.17, § 980.08(5) involves the "county department under s. 51.42" in the preparation of the conditional release/supervised release plan. And as in § 971.17, DHFS in § 980.08(5) may contract with a

---

[22] WISCONSIN STAT. § 971.17(3)(d) provides:

If the court finds that the person is appropriate for conditional release, the court shall notify the department of health and family services. The department of health and family services and the county department under s. 51.42 in the county of residence of the person shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. The department of health and family services may contract with a county department, under s. 51.42 (3) (aw) 1. d., with another public agency or with a private agency to provide the treatment and services identified in the plan. The plan shall specify who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 21 days after the court finding that the person is appropriate for conditional release, unless the county department, department of health and family services and person to be released request additional time to develop the plan. If the county department of the person's county of residence declines to prepare a plan, the department of health and family services may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the individual will be living in that county.

county or a public or private agency to provide services and treatment. Policy reasons favoring DHSS financial responsibility expressed in *Rolo* are equally applicable here. These include:

> (1) the State made the decision to charge the person with a criminal offense;
>
> (2) the State tried the person for the criminal offense;
>
> (3) the State, through the state court system, ordered the person committed to the DHSS; and
>
> (4) the person remains under the custody, care and treatment of the State (i.e., the DHSS) until discharged.

*Rolo*, 174 Wis. 2d at 717.

¶ 32. In 1997, we observed that DHFS, not the trial court, is the entity charged with providing housing for persons committed under WIS. STAT. ch. 980. In *State v. Keding*, 214 Wis. 2d 363, 571 N.W.2d 450 (Ct. App. 1997), when the trial court found that placement in a group home was the appropriate placement, but committed the defendant to a locked institution because no group home was available, we reversed and remanded. In doing so, we held that:

> [o]nce the circuit court concluded that supervised release was appropriate, it was not the circuit court's task to identify the specific work or treatment programs that Keding would engage in, nor was it the circuit court's job to find him an appropriate residence. Rather, it is the *department's* statutory duty to "arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order."

*Id.* at 370–71 (emphasis in original).

¶ 33. Two years later, in *Sprosty*, 227 Wis. 2d 316, the supreme court decided the question of "who bears the burden of the cost of the necessary programs and facilities under Wis. Stat. ch. 980, the county department or DHFS." *Sprosty*, 227 Wis. 2d at 336. The court observed that, as it held previously in *Rolo*, Wis. Stat. § 980.12 requires DHFS to pay "for all costs relating to the evaluation, treatment and care of persons evaluated or committed" under ch. 980. *Sprosty*, 227 Wis. 2d at 336. The court went on to hold that "DHFS has the financial burden of paying for necessary programs and facilities for those persons who are evaluated or committed under Wis. Stat. ch. 980." *Sprosty*, 227 Wis. 2d at 337.

¶ 34. Assertion of inadequate resources is not a sufficient reason for denying supervised release. In some cases, the creation of facilities and services to provide the requisite treatment and to protect the public while a person is on supervised release in the community may be necessary. *Id.* at 320. DHFS is responsible for creating or providing such facilities and services. Wis. Stat. § 980.12(1); *Sprosty*, 227 Wis. at 316. Citing Wis. Stat. §§ 980.06(2)(b) and (d), and 980.08(6), and *Keding*, 214 Wis. 2d at 370–71, the *Sprosty* court held that "[i]f the court concludes that supervisory release is appropriate, it is then *DHFS's* statutory duty to 'arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order.'" *Sprosty*, 227 Wis. 2d at 327 (citation omitted; emphasis in original).

¶ 35. The *Sprosty* court also analyzed "whether the circuit court has the authority under Wis. Stat. § 980.08(5) to order a county department or DHFS to create whatever programs or facilities are neces-

361

sary . . . ." *Sprosty*, 227 Wis. 2d at 327. It observed that: (1) § 980.08(5) provides a procedural framework for a trial court to follow in determining the conditions of release; (2) in § 980.08(5) "shall" is mandatory; and that (3) the trial court is not to consider the care and treatment factors in WIS. STAT. § 980.05 when determining whether supervised release is appropriate under WIS. STAT. § 980.04, *Sprosty*, 227 Wis. 2d at 328–9.

¶ 36. The *Sprosty* court also rejected the constitutional challenges to WIS. STAT. ch. 980, *Sprosty*, 227 Wis. 2d at 330, in part because the duration of the commitments are reasonably related to the purposes of the commitments, *id.* (citing *State v. Post*, 197 Wis. 2d 279, 314–16, 541 N.W.2d 115 (1995)), and because WIS. STAT. § 980.06(1) requires that control and treatment must be in "the least restrictive manner consistent with the requirements of the person and . . . the court's commitment order." *Sprosty*, 227 Wis. 2d at 330. The *Sprosty* court observed that it earlier accepted the State's representations that "specific treatment" would be provided, that the State would "not simply warehouse them" and that the legislature would "proceed in good faith and fund the treatment programs necessary" when the court rejected these constitutional challenges. *Id.* at 331. The court concluded its analysis with the language relied upon now by the State: "[a]ccordingly, we hold that a circuit court has the authority under WIS. STAT. § 980.08(5) to order a county, through DHFS, to create whatever programs or facilities are necessary to accommodate an order for supervised release." *Sprosty*, 227 Wis. 2d at 331.

¶ 37. The supreme court in *Sprosty* was faced with a *county* submitted plan which recommended incarceration because of inadequate resources to com-

ply with the court order. *Id.* at 319. The court, however, considered the circuit court's power to impose financial responsibility for necessary resources in terms of either the state *or* the county. *Id.* at 320. In that context, after repeatedly concluding that DHFS is financially responsible for all costs, and after recognizing that the legislative requirement of joint creation of a release plan made cooperative activity mandatory, the court's holding that a circuit court may "order a county, through DHFS" to require compliance from whatever entity might be failing to comply with its statutory obligations confirms a circuit court's maximum discretion and power. Nothing in the context in which the court announced its holding suggests to us that it wished to require the circuit court to issue any particular order, nor that it contemplated that a circuit court would order a county to do an act for which DHFS was fully responsible but had repeatedly failed to accomplish.

¶ 38. The Wisconsin Supreme Court recently reaffirmed its holdings in *Sprosty* in its decision in *Schulpius*, 287 Wis. 2d 44. In *Schulpius*, the court reviewed DHFS's attempts to find a suitable placement for an individual committed under Wis. Stat. ch. 980 who was determined to be eligible for supervised release into Milwaukee County. *Id.*, ¶ 35. In reviewing DHFS's failure, over four years, to find a suitable placement, the court noted that this was not due to any lack of diligence on DHFS's part. Rather, the court observed:

> The record includes examples of the DHFS attempting to address and correct the problem of placing individuals deemed appropriate for supervised release in appropriate community facilities ... includ[ing] ... the preparation of placement plans in conjunction with Milwaukee County, the search for appropriate facilities,

and work with the Wisconsin Legislature and the committee established by it, to emphasize the very real need for a transitional facility in Southern Wisconsin for Chapter 980 supervised release.

*Id.*, ¶ 45. The court went on to note that "[t]he Wisconsin Legislature has also taken positive steps toward finding a solution" with its passage of 2003 Wisconsin Act 187 establishing a "committee 'to make recommendations regarding the location of a facility for the treatment of sexual predators.' " *Id.*, ¶ 46 (quoting 2003 Wis. Act 187). The court further observed that this legislative commission[23] ("Committee") had now provided its report to the Legislature. *Id.*, ¶ 47. While acknowledging that the Committee had failed its charge to identify suitable locations for a placement facility for individuals committed under ch. 980, the court noted that the Committee and its July 12, 2005 report did provide information for the Legislature and that:

[i]t is certainly appropriate to give the State of Wisconsin the opportunity to act on the Committee report [and b]ased on that report, there is a reasonable expectation that the legislature will take further action to address the barriers the Committee identified, in regard to the location of an appropriate site or sites for a residential facility or dwelling in Milwaukee County.

*Schulpius*, 287 Wis. 2d 44, ¶ 47.

¶ 39. The court went on to remark that "[i]t is significant that the State Building Commission appropriated approximately $1.3 million toward the establishment of a residential facility or dwelling," for placing WIS. STAT. ch. 980 committed persons on supervised release in

---

[23] As noted in 19, *supra,* this committee was known as The Sexually Violent Persons Transitional Facility Siting Advisory Committee.

Milwaukee County, and that "[c]ounsel for the DHFS stated at oral argument that, if necessary, the DHFS will request more money in support of this project." *Id.*, ¶ 48. Finally, the supreme court "conclude[d] that, under an appropriate set of facts, [*i.e.*, where the committed individual is still eligible for supervised release] a court may order the DHFS to create a residential facility or dwelling necessary to accommodate an order for supervised release." *Id.*, ¶ 49.

¶ 40. We are now more than a year past the legislative committee report, and three years beyond the trial court's latest order to DHFS to find appropriate permanent placement for Morford. The State argues that the court should order Milwaukee County to build a facility to house Wis. Stat. ch. 980 supervised releasees, even while acknowledging that the statutorily-responsible state agency has been unable to locate or acquire such a facility. Reams of paper in this record demonstrate that in spite of the efforts by DHFS to obtain a voluntarily provided residential location, the State has neither located nor acquired a residence by that process. Neither has the State arranged for another county to voluntarily place Morford on a permanent basis.[24] Nothing in the record demonstrates a pattern of obstruction of the

---

[24] We do not suggest bad faith or dilatory tactics on the part of DHFS in its attempts to obtain voluntary cooperation with neighborhoods and the public. It is evident DHFS has made such efforts in abundance. However, the inability to negotiate a location satisfactory to all possible interests does not absolve DHFS of its basic responsibility under the statute to provide an appropriate facility. History, and DHFS experience, suggest that voluntary cooperation may not be possible, and that other alternatives available to DHFS and the State may be required.

State's efforts by the county.[25] Nonetheless, the State asked the court to order Milwaukee County to do that which the State had not done, and which Milwaukee County has no statutory obligation to do.

¶ 41. This court, relying on *Sprosty*, has previously held that when a trial court is faced with the impossibility of placing a person on Wis. Stat. ch. 980 supervised release, "the trial court had discretion to modify the release plan to effectuate supervised release, including the power to order *the department* [DHFS] to create facilities and services." *State v. Krueger*, 2001 WI App 76, ¶ 65, 242 Wis. 2d 793, 626 N.W.2d 83 (emphasis added).[26] The *Schulpius* court, in concluding "that the *Sprosty* decision is still valid," also reaffirmed that *Sprosty* "enables a circuit court to fashion a remedy in an appropriate situation," *i.e.*, when no suitable placement for a ch. 980 committed individual eligible for supervised release can be located. *Schulpius*, 287 Wis. 2d 44, ¶ 43.

---

[25] The only county action specifically described in the record is the letter from the County Executive and the subsequent County Board resolution refusing to consider the sale of county-owned land for construction of a transitional facility.

[26] The political and public reaction when Krueger's proposed placement with his stepfather in Manitowoc became known bears similarities to the problems documented in this case. The local newspaper published the exact release date for Krueger on the front page of the paper; as a result, according to DHFS, the stepfather withdrew his offer of housing. Harassing phone calls, and numerous visits by unknown people to "express their dissatisfaction" with the proposed placement were reported. *State v. Krueger*, 2001 WI App 76, ¶ 65, 242 Wis. 2d 793, 626 N.W.2d 83. Because of the public reaction, the former employer withdrew his offer of re-employment, *id.*, ¶ 29, and the stepfather's landlord threatened eviction if the placement occurred. *Id.*, ¶ 35.

The *Schulpius* court's holding that a court may order DHFS to create a residential facility and that it is through DHFS that a jointly prepared plan is implemented further supports the trial court's decision in this case. *Id.*, ¶ 42. Accordingly, we conclude that the trial court in the present case has the power to "fashion a remedy," which includes rejecting proffered solutions which it finds inadequate or otherwise unworkable or not sanctioned by existing law. The trial court in the present case has done so in its denial of DHFS's motion to compel Milwaukee County to provide housing for a transitional facility for WIS. STAT. ch. 980 supervised releasees and in finding that "Milwaukee County is not responsible to build a Chapter 980 facility if the State of Wisconsin Department of Health & Social [sic] Services is unable to do so." Nonetheless, Morford still has not been placed in what a court concludes is appropriate permanent placement.

¶ 42. Court orders which are neither implemented, nor modified so they can be implemented, bring our entire legal system into disrepute. The State's attempt to avoid its responsibility to provide the "care and treatment," which it is required by statute and court decision to provide, cannot be sanctioned. The trial court properly exercised its discretion when it declined the State's request to order Milwaukee County to do that for which the State is responsible but had not done.

*By the Court.*—Order affirmed; and cause remanded.